RENDERED: NOVEMBER 12, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0563-DG

UPPER POND CREEK VOLUNTEER FIRE
DEPARTMENT, INC.                                              APPELLANT


|           | ON REVIEW FROM COURT OF APPEALS |
|-----------|---------------------------------|
| V.        | NO. 2017-CA-1856                |
|           | PIKE CIRCUIT COURT NO. 17-CI-00634 |


RONNIE KINSER AND AMANDA KINSER                              APPELLEES


**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>AFFIRMING</u>**

Upper Pond Creek Volunteer Fire Department, Inc. ("Pond Creek")
appealed an order of the Pike Circuit Court, in which the trial court denied
Pond Creek's motion to dismiss a portion of its claims until material facts could
be developed in discovery. On appeal, the Court of Appeals dismissed the
appeal for lack of jurisdiction, concluding that it was an improper interlocutory
appeal. This Court granted discretionary review. Having reviewed the record
and the arguments of the parties, we hereby affirm the Court of Appeals.

## I. BACKGROUND

On the morning of October 19, 2016, a Kentucky State Police trooper
responded to a call in Pike County. When the trooper arrived on the scene, he
found Ronnie Kinser lying beside his car, with his right arm pinned beneath

the car's front tire. Kinser was conscious and explained that he had been beneath the car all night, though he could not explain how he had become trapped. In his incident report, the trooper speculated that Kinser exited the vehicle and may have tried to stop it from "going over the hill," at which point he became trapped beneath the vehicle and dragged down the hill.

Members of the Upper Pond Creek Volunteer Fire Department responded. Appalachian First Response Emergency Services, Inc., a private ambulance provider, also responded. The first responders ultimately freed Kinser and transported him to Pikeville Medical Center. Kinser suffered serious injuries and was hospitalized for several weeks. His right arm was eventually amputated.

On June 9, 2017, Ronnie and his wife, Amanda Kinser, filed a complaint against Pond Creek and unknown employees of the fire department, as well as the private ambulance provider and unknown employees of that ambulance service. Counts I and II were against the ambulance provider and are not at issue in this appeal. Count III alleged that the fire department "either intentionally or negligently failed to properly train its employees in accordance with industry standards," "either intentionally or negligently failed to ensure that its employees followed their training and protocols when administering medical treatment or other assistance to its patients in accordance with the standards of medical care," and "either intentionally or negligently failed to hire and retain qualified and properly trained employees to provide care or other

2

assistance for its patients in accordance with the standards of medical care."[1] Count IV alleged that the employees of the fire department "either intentionally or negligently failed to follow their training in providing care or other assistance to Ronnie Kinser" and "either intentionally or negligently failed to provide proper care or other assistance to their patient, Ronnie Kinser, within the standards of medical care."[2] In Count V, against all of the defendants, Amanda Kinser alleged a loss of consortium. The Kinsers also alleged that Ronnie suffered from extreme emotional distress and permanent disfigurement and Amanda also suffered from extreme emotional distress. The couple sought punitive damages for the "gross negligence and malice" of the defendants.

Pond Creek filed a Motion to Dismiss, asserting governmental immunity under Kentucky Revised Statute ("KRS") 75.070. Under that statute, a volunteer fire department is considered an agent of the Commonwealth and acting in a governmental capacity when "answering any fire alarms, performing fire prevention services, or other duly authorized emergency services." KRS 75.070(1). The volunteer fire department "shall [not] be liable in damages for any omission or act of commission or negligence while answering or returning from any fire or reported fire, or doing or performing any fire prevention work under and by virtue of this chapter." KRS 75.070(2). In response, the Kinsers

---

[1] Throughout this opinion, we refer to these allegations as claims of intentional or negligent training, supervision, hiring, and retention.

[2] The complaint does not clearly state whether these claims are against the unnamed employees in their official or individual capacities. However, based upon the parties' arguments before the trial court, we believe these claims were made against the employees in their individual capacities.

argued that at least some of their claims fell outside the scope of this statute and, furthermore, the motion was premature and should be denied until discovery concluded.

A hearing was held on August 18, 2017. On October 4, 2017, the circuit court granted the Motion to Dismiss as to all claims against Pond Creek and its unknown employees based on governmental immunity. The claims against the private ambulance provider were allowed to continue, but as noted above, those claims are not at issue in this appeal.

The Kinsers thereafter filed a Motion to Alter, Amend, or Vacate, and the court conducted a hearing on November 3, 2017. At that hearing, the Kinsers conceded that the fire department was likely immune under KRS Chapter 75 for certain actions taken while responding to the emergency call. However, the Kinsers argued that KRS 75.070 does not expressly apply to their other claims, such as negligent hiring and training. Furthermore, they argued, the "unnamed employee" defendants would only be entitled to qualified official immunity, and the facts would need to be further developed in discovery to determine if such immunity applied.

After the November 3, 2017 hearing, the circuit court entered an order granting the Kinsers 120 days "to conduct discovery regarding the governmental immunity of Upper Pond Creek Volunteer Fire Department and its unknown employees." The circuit court also set a hearing for March 16, 2018.

Soon after, on November 8, 2017, the circuit court issued an order addressing the Motion to Alter, Amend, or Vacate. In that order, the circuit court found that the fire department was entitled to statutory immunity[3] for "any acts or omissions to act or negligence while answering an alarm, performing fire prevention services, or other duly authorized emergency services." Accordingly, the court upheld that portion of its October 4, 2017 order dismissing such claims. However, the circuit court found that the statute did not expressly provide immunity for the remaining claims (i.e, the claims related to training, supervision, hiring, and retention), and further found that it could not make a proper determination of immunity for such acts based on the limited information in the record. It also found that the unknown employees of the fire department "would only be entitled to qualified official immunity." The court again found that it could not make a determination of such immunity given the lack of evidence in the record.

Accordingly, the circuit court (1) overruled the Motion to Alter, Amend, or Vacate to the extent it applied to any allegations against Pond Creek related to "any acts or omissions to act or negligence while answering an alarm, performing fire prevention services, or other duly authorized emergency

---

[3] In the November 8, 2017 order, the circuit court repeatedly references KRS 75.050. Under that statute, fire protection districts and similar entities may contract with other such entities, like volunteer fire departments, for the furnishing or receiving of fire protection services. It further provides that "[t]he personnel and equipment of a contracting party, in going to and returning from a fire, or in answering and responding to a false fire alarm or call, and while endeavoring to extinguish fires within the area covered by the contract, shall be deemed and hereby is declared to be engaged in the exercise of a governmental function." However, at both the trial level and on appeal, the parties argued the applicability of KRS 75.070.

5

services"; and (2) sustained the Motion to Alter, Amend, or Vacate as to the remaining allegations. As to those claims, the court clarified that "at this point the Upper Pond Creek Volunteer Fire Department is not entitled to immunity, and the parties shall continue to conduct discovery on this matter." The court also clarified that the fire department could raise the issue of immunity "after sufficient proof has been discovered to allow the Court to make sufficient findings on this issue."

Pond Creek filed a Notice of Appeal of the circuit court's November 8, 2017 order. On February 15, 2018, the Court of Appeals dismissed the appeal as an improper interlocutory appeal. It subsequently denied Pond Creek's Motion to Reconsider, and the Kinsers sought discretionary review with this Court. On August 8, 2018, this Court granted discretionary review, vacated the Court of Appeals' February 15, 2018 decision, and remanded the matter back to the Court of Appeals "for consideration of whether there was sufficient evidence to warrant a summary judgment on immunity grounds."

On remand, the Court of Appeals reviewed the record and "conclude[d] that there is **no evidence** in the record whatsoever to warrant entry of summary judgment on the issue of immunity." As a result, the Court of Appeals dismissed the appeal for lack of jurisdiction. In doing so, the court acknowledged that a circuit court's denial of immunity, to the extent that decision turns on an issue of *law*, is immediately appealable. In this case, however, the circuit court did not conclusively resolve the immunity issue or make a finding as a matter of law on the issue of immunity; rather, the court

denied the claim of immunity pending further discovery. The Court of Appeals therefore concluded that the interlocutory order was *not* immediately appealable, and as a result, the Court of Appeals lacked jurisdiction.

This Court granted discretionary review to determine whether the immunity provided under KRS 75.070 for the performance of emergency services also applies to the training, supervision, hiring, and retention of the personnel who perform those emergency services. However, having reviewed the record and the arguments of the parties, we now hold that this was an improper interlocutory appeal, and as a result, we cannot consider the merits of the immunity issue.

## II. ANALYSIS.

The Court of Appeals twice concluded that it lacked the jurisdiction necessary to review the trial court's order. In its second order, it explained that "the circuit court did not conclusively determine any disputed question, resolve any right, or otherwise provide us with anything to review." Rather, the Court of Appeals explained, the trial court's order "denied a claim of immunity **for the time being** on the basis that further discovery was needed." Stated another way, the interlocutory order did not deny a claim of immunity *as a matter of law.*

In disagreement with the Court of Appeals, the fire department argues that it was entitled to absolute immunity as a matter of law, and the trial court's denial of that immunity claim warrants an immediate appeal. The Kinsers, on the other hand, argue that this appeal involves a claim of qualified

7

governmental immunity that requires further factual development. As a point of clarification, we note that KRS 75.070 "does not attempt to grant *absolute* immunity, but rather recognizes and extends waiver of immunity for acts carried out only in a government capacity." *Caneyville Volunteer Fire Dep't. v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 806 (Ky. 2009).

However, the propriety of this appeal does not necessarily turn on whether the statute confers absolute or qualified immunity. Rather, we focus on the nature of the trial court's ruling. On this point, the Kinsers argue that the trial court neither granted nor denied the motion to dismiss the claims related to the training, supervision, hiring, or retention of the fire department employees; rather, they argue, the trial court passed ruling on those claims pending further discovery. We disagree. In its November 8, 2017 order, the trial court sustained the Kinser's Motion to Alter, Amend, or Vacate as to the claims related to training, supervision, hiring, and retention. In doing so, it amended its previous order and explained that "at this point the Upper Pond Creek Volunteer Fire Department is not entitled to immunity [for these claims], and the parties shall continue to conduct discovery on this matter." We believe that this is best characterized as a denial of the fire department's Motion to Dismiss the claims related to training, supervision, hiring, and retention, as well as the claims against the individual unnamed employees. Nevertheless, for the reasons stated below, we agree with the Kinsers and the Court of Appeals that this matter was not ripe for review.

8

Typically, only final judgments are appealable. Under Kentucky Rule of Civil Procedure ("CR") 54.01, "[a] final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding." If the order is interlocutory, rather than final, an appellate court lacks the jurisdiction necessary to review the order. *Wilson v. Russell,* 162 S.W.3d 911, 913 (Ky. 2005) (citations omitted).

An order denying a dispositive motion, like a motion to dismiss, is usually considered to be an interlocutory, non-appealable order. *Breathitt Cty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009); *see also Chen v. Lowe*, 521 S.W.3d 587, 590 (Ky. App. 2017) (citations omitted). However, KRS 22A.020(2) states, "The Court of Appeals has jurisdiction to review interlocutory orders of the Circuit Court in civil cases, but only as authorized by rules promulgated by the Supreme Court." For example, "an order denying a substantial claim of absolute immunity is immediately appealable even in the absence of a final judgment." *Prater*, 292 S.W.3d at 887. We have therefore permitted interlocutory appeals of orders denying claims of sovereign, governmental, and official immunity. *See, e.g., Commonwealth v. Ky. Ret. Sys.*, 396 S.W.3d 833 (Ky. 2013) (sovereign immunity); *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644 (Ky. 2017) (governmental immunity); *Baker v. Fields*, 543 S.W.3d 575 (Ky. 2018) (qualified official immunity).

However, a trial court's order is not immediately appealable simply because immunity is at issue. If the trial court's decision leaves the immunity question unresolved, that order is not immediately appealable. For example,

9

the Court of Appeals held in *Chen v. Lowe* that a trial court's denial of a motion for summary judgment was not subject to immediate appellate review, even though immunity served as the basis for the motion. 521 S.W.3d at 591. In that case, a former law student of the University of Louisville's Brandeis School of Law sued the University and the law school's former dean, in both his individual and official capacities. The dean filed a motion to dismiss[4] on the basis of qualified official immunity. *Id.* at 590. The trial court denied the motion to dismiss the claims against the dean in his individual capacity, finding that genuine issues of material fact remained regarding the dean's entitlement to qualified immunity. *Id.*

In dismissing that appeal, the Court of Appeals acknowledged that "if we were to determine that the circuit court actually denied [the dean's] claim of immunity, we would have jurisdiction to hear his appeal." 521 S.W.3d at 590. The Court of Appeals explained,

> "[i]n denying [the dean's] motion to dismiss, however, the circuit court did not make a final ruling on the issue of qualified immunity. Rather, the court found that there were disputed issues of material fact regarding [the dean's] entitlement to qualified immunity. Therefore, the issue of [the dean's] immunity remains unresolved, and the order denying his motion to dismiss is not immediately appealable.

*Id.* at 590–91 (citing *Broughton v. Russell*, No. 2009-CA-001753-MR, 2010 WL 4320436, at *2 (Ky. App. Oct. 29, 2010); *Hyden-Leslie Water Dist. v. Hoskins*,

---

[4] The Court of Appeals clarified that the motion to dismiss was transformed into a motion for summary judgment when the trial court considered facts and evidence outside the complaint.

10

No. 2010-CA-000599-MR, 2011 WL 919818, at *2 (Ky. App. Mar. 18, 2011); *Adair Cty. v. Stearman*, No. 2010-CA-001953-MR, 2011 WL 4103137, at *2 (Ky. App. Sept. 16, 2011)).

The Court of Appeals therefore dismissed the appeal. In doing so, it explained that it had reviewed the record and agreed with the circuit court's finding that factual issues remained unresolved. *Id.* at 591. Thus, the Court of Appeals stated, "We will not overstep our bounds by attempting to make findings of fact on those issues so we can determine an immunity question that the circuit court has not yet fully addressed." *Id.*

The three unpublished cases cited by the Court of Appeals reflect similar analyses. For example, in *Hyden-Leslie Water District v. Jessie Hoskins and Perry Construction, Inc.*, also cited by the Kinsers, the Court of Appeals dismissed an appeal of an order denying summary judgment. 2011 WL 919818, at *1. The defendant water district had argued that it was entitled to statutory immunity under KRS 65.2003, but the circuit court found that there were "genuine issues of material fact to be tried." *Id.* The Court of Appeals distinguished the case from *Breathitt County Board of Education v. Prater*, in which a proper interlocutory appeal had been taken from a trial court's order denying a motion to dismiss based on immunity. In that case, the trial court had expressly ruled that the defendant's actions were proprietary rather than governmental. In *Hyden-Leslie*, however, the circuit court had made no such ruling. Instead, it only found that material issues of fact remained in dispute. The Court of Appeals therefore dismissed the appeal.

11

In this case, we adopt a similar analysis. The trial court did not make a final ruling on the issue of immunity. Rather, the trial court concluded that additional factual development was necessary to determine if governmental immunity applied to the claims of intentional or negligent training, supervision, hiring, and retention. The trial court also declined to dismiss the claims against the unknown employees because additional facts were needed to determine if they qualified for official immunity. Stated another way, the trial court left these questions of immunity unresolved.

We agree with the trial court's conclusion that additional factual development was necessary. Under the plain language of KRS 75.070, the statute does not expressly provide statutory immunity for claims of intentional or negligent training, supervision, hiring, and retention. Rather, by its own terms, it provides immunity for "any omission or act of commission or negligence while answering an alarm, performing fire prevention services, or other duly authorized emergency services." KRS 75.070(1). Nevertheless, we recognized in *Caneyville Volunteer Fire Department v. Green's Motorcycle Salvage, Inc.* that "[f]ire departments are agents of the Commonwealth who engage in an essential governmental function in providing for the safety and well-being of its citizens." 521 S.W.3d at 805. We further recognized that KRS 75.070 "confers governmental immunity to fire departments and qualified official immunity to firefighters engaged in discretionary functions."

Therefore, two questions remain. The first is whether the fire department's actions—namely, training, supervision, hiring, and retention—

12

were governmental as opposed to proprietary functions entitling the department to immunity. The second is whether the employees' actions were discretionary as opposed to ministerial entitling them to immunity. The dissent urges us to answer the first question on the merits, that training, supervision, hiring, and retention are intimately tied to a volunteer fire department's governmental mission and KRS 75.070 confers immunity for these actions. We do not necessarily disagree but based on the record before us are unwilling to make that definitive statement. Rather, we agree that additional factual development is necessary to answer these questions. We will not undertake a fact-finding mission to resolve questions that the circuit court has not yet fully addressed.

For these reasons, we hold that the trial court's order was interlocutory; it was not subject to immediate review, and the Court of Appeals properly concluded that it lacked appellate jurisdiction. In reaching this conclusion, we are mindful that orders denying immunity are subject to immediate appeal because "unlike other defenses, immunity is meant to shield its possessor not simply from liability but from the costs and burdens of litigation as well." *Prater*, 292 S.W.3d at 888. The fire department argues that it is now subject to the burdens of litigation, namely, discovery. However, we note that the trial court's November 3, 2017 order allowed 120 days "to conduct discovery regarding the governmental immunity of Upper Pond Creek Volunteer Fire Department and its unknown employees." Similarly, its November 8, 2017 order directed the parties to "continue to conduct discovery on this matter,"

13

referring to the immunity issues. In other words, the trial court limited discovery to the issue of immunity. It then explained that, after that limited period of discovery, the fire department could reassert its immunity defense. If the trial court denies that claim, Pond Creek can file a proper interlocutory appeal, even before a final judgment is entered in the case. Thus, at this stage of the proceedings, the only burden that Pond Creek faces is proving its entitlement to immunity.

### III.    CONCLUSION

For the reasons set forth above, we hereby affirm the decision of the Court of Appeals.

Minton, C.J; Hughes, Keller, Lambert, VanMeter and Wright, JJ., sitting. Minton, C.J.; Hughes, Keller, Lambert and VanMeter, JJ., concur. Wright, J., dissents by separate opinion. Nickell, J., not sitting.

WRIGHT, J., DISSENTING:  I respectfully dissent.  I would reverse the Court of Appeals and instruct the trial court to dismiss the case on immunity grounds.

Kentucky Revised Statutes (KRS) 75.070(1) provides:

 A . . . volunteer fire department and the personnel [thereof], answering any fire alarms, performing fire prevention services, or other duly authorized emergency services . . . shall be considered an agent of the Commonwealth of Kentucky, and . . . shall not be liable in damages for any omission or act of commission or negligence while answering an alarm, performing fire prevention services, or other duly authorized emergency services.

Pursuant to the statute, the trial court dismissed all the Kinsers' claims against the Upper Pond Creek Volunteer Fire Department based on "any acts or

14

omissions to act or negligence while answering an alarm, performing fire prevention services, or other duly authorized emergency services." This is not in contention. The bases of the current appeal are the claims related to hiring, retention, or training of the volunteer firefighters.

As the trial court found, any claims based on Pond Creek's "acts or omissions . . . while . . . performing . . . emergency services" have been dismissed on grounds of statutory immunity. That is now the law of the case and not before this Court on appeal. It is undisputed Pond Creek and its personnel performed an authorized emergency service when volunteer firefighters rescued Kinser; therefore, any injury Kinser suffered was a result of that rescue, and the fire department and its personnel are immune from suit related to said rescue.

## I. GOVERNMENTAL IMMUNITY

### A. Volunteer Fire Department

Pond Creek is a volunteer fire department and was acting in its official and governmental capacity; therefore, Pond Creek had governmental immunity granted by the General Assembly in KRS 75.070. Fire and emergency rescue services are essential governmental services, and a lawsuit against Pond Creek would impact the sovereign's purse. Justice Venters's concurrence in *Coppage Construction Co. v. Sanitation District No. 1*, 459 S.W.3d 855, 865 (Ky. 2015), states, "[i]t has long been recognized within the common law that the historical origin of the doctrine of sovereign immunity was, in part, the protection of the king's purse." Obviously, this governmental service is underfunded since it is

15

being performed by a volunteer group. If governmental resources are further depleted by lawsuits, then the fire and emergency services may not be available—or even exist—when citizens desperately need them in the future.

Little more than a decade ago, our Court addressed a case involving a volunteer fire department's statutory governmental immunity in *Caneyville Volunteer Fire Department v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790 (Ky. 2009). This Court held volunteer fire departments are "cloaked in immunity from suit in tort" and are "agent[s] of the Commonwealth, having been recognized as such by the General Assembly by KRS 75.070 and declared immune from suit in tort. . . . Therefore, it is not within our authority to impose civil liability on an arm of the government carrying out such a government function." *Id.* at 805; 794. We also noted "volunteer fire departments are government agents engaged in governmental, as opposed to, proprietary functions." *Id.* at 804-05. "To be sure, the very term 'volunteer fire department' attests to their task: that is to provide a gratuitous service to the population where by volunteer citizens risk life and limb to provide a public service." *Id.* at 805.

In *Caneyville*, Chief Justice Minton's concurring opinion provided further guidance: "[t]he statute is straightforward and uses language broad enough to demonstrate the **General Assembly's intent to provide as much immunity and protection as possible**, both to fire departments and to their employees answering fire alarms." *Id.* at 814 (emphasis added). Justice Hughes authored a separate concurring opinion clarifying that the volunteer fire department

16

qualified for sovereign immunity "through [its] 'agent of the Commonwealth' status accorded it in KRS 75.070." *Id.* at 817.

Consequently, it is clear this Court read KRS 75.070 broad enough to "**confer[] governmental immunity upon** municipal fire departments, fire protection district fire departments and **volunteer fire departments**." *Id.* at 807 (emphasis added). As this Court stated, "[s]ignificantly, KRS 75.070 characterizes fire departments and volunteer fire departments as 'an agent of the Commonwealth' that acts 'solely and alone in a governmental capacity.'" *Id.* at 805 (quoting KRS 75.070). When a volunteer fire department is "engaging to a function essential to government," it has governmental immunity. *Id.* at 809.

Could Pond Creek have carried out the emergency service of rescuing Kinser without performing the tasks of hiring, retention, and training? No. Without Pond Creek performing the tasks of hiring, retention, and training personnel, it would have been impossible for Pond Creek to rescue Kinser. Even though those tasks were performed prior to arrival on the scene of the emergency, they were an essential part of the rescue. Therefore, the claims against Pond Creek—even if for negligent hiring, retention, and training— cannot go forward because Pond Creek is an agent of the Commonwealth and would have been acting within its authority to carry out a clear governmental function—emergency services—when hiring, retaining, and training its personnel.

17

If the volunteer fire department was engaged in a non-government function, then there may be a situation like this Court analyzed in *Kentucky River Foothills Development Council, Inc. v. Phirman*, 504 S.W.3d 11 (Ky. 2016). However, that is not the case here. It is undisputed this was a call for emergency services; as such, any training, hiring, or retention of personnel derives from the volunteer fire department's essential need to perform its government function of providing emergency services.

## B. Firefighters

The personnel of the volunteer fire department are evaluated under an official and qualified immunity analysis. *See Caneyville*, 286 S.W.3d at 808. There is a difference in the types of immunity KRS 75.070 grants, which is why we "construe[d] KRS 75.070 as acknowledging the **governmental immunity of fire departments** and the **official and qualified immunity of firefighters**." *Id.* (emphasis added). "KRS 75.070 recognizes the official immunity enjoyed by firefighters engaged in their official acts; it should not, however, be construed to confer immunity upon firefighters sued in their personal capacity, as such liability turns on a subsidiary qualified official immunity analysis." *Id.* at 809.

In *Caneyville*, the fire chief was sued "in both his official and individual capacities." *Id.* at 810. We held the volunteer fire department's "immunity extends to its officers and employees who are sued in their official capacity." *Id.* at 810. Further, the fire chief was allegedly negligent for preparatory matters—claims that he "lacked sufficient equipment and personnel"—related to fire-fighting; we "noted that a judgment call by a fire chief **as to how, with**

18

**what assistance, and in what manner** to extinguish a fire is the very definition of a discretionary act." *Id.* at 810 (emphasis added).

Kinser alleges damages against the unknown employees for preparatory matters—such as in *Caneyville*—related to emergency services. The remaining claims before this Court are any training, hiring, or retention of personnel. Any judgment call by an officer of Upper Pond Creek Volunteer Fire Department on issues of training, hiring, or retention of personnel would also be discretionary acts. For those discretionary acts, the volunteer fire department's "immunity extends to its officers and employees who are sued in their official capacity." *Id.* at 810.

In the present case, it is important to examine when Pond Creek's firefighters had any contact or connection with Kinser. It is clear that the firefighters' only contact with Kinser occurred when they rescued him from being trapped beneath his vehicle—where he lay trapped by the weight of his vehicle on his right arm.

Since KRS 75.070(1) plainly states personnel "shall not be liable in damages for any omission or act of commission or negligence while . . . performing . . . emergency services," a volunteer fire department's personnel are clearly immune from tort damages occurring—by "any omission or act of commission or negligence"—during an emergency response. Here, the only time Pond Creek's volunteer firefighters could have injured Kinser was by an "omission or act of commission or negligence while . . . performing . . . emergency services."

19

We established the immunity of Pond Creek's officers above. Next, we examine the actions of the volunteer firefighters who responded to the emergency call. The volunteers, who were not officers, would not have made the decisions on hiring, retaining, or training personnel. As noted, their actions could only have resulted in damages to Kinser if one of the volunteers omitted an act—or performed an act improperly or negligently—during the emergency for which they had immunity. Therefore, since the General Assembly has made clear that Pond Creek and its personnel cannot be liable for damages while performing emergency services, the cloak of immunity during the emergency protects them from Kinser's claims.

## II. CONCLUSION

If the Upper Pond Creek Volunteer Fire Department, or its volunteer firefighters, committed negligence during the emergency rescue, they were entitled to immunity pursuant to KRS 75.070. Importantly, Pond Creek is an agent of the Commonwealth and has sovereign immunity because it was acting in its governmental capacity. Its officers' decision on training, hiring, or retention of personnel were discretionary and an essential part of providing emergency services, which provides governmental and statutory immunity for them. Its volunteers were acting in their official capacities during the call for emergency services and have statutory immunity. Therefore, if Pond Creek, its officers, or its volunteers injured Kinser, it was clearly part of authorized emergency services. As such, Upper Pond Creek Volunteer Fire Department

20

and its personnel are immune, and I would direct the trial court to enter an order dismissing on those grounds.


COUNSEL FOR APPELLANT:

Jonathan C. Shaw
Porter, Banks, Baldwin & Shaw, PLLC


COUNSEL FOR APPELLEES:

Ronnie Wayne Diddle
Robert Michael Pack
Michael Pack and Ron Diddle, PLLC