RENDERED:  JUNE 24, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1044-MR

MICHAEL NEWMAN; ANTHONY
SIEG; BRIAN RAHO; AND VICTORY
GENTRY                                                                          APPELLANTS


                           APPEAL FROM JEFFERSON CIRCUIT COURT
v.                         HONORABLE ANNIE O'CONNELL, JUDGE
                           ACTION NO. 19-CI-003492


J.A., A MINOR, BY AND THROUGH
S.A., HIS MOTHER AND NEXT
FRIEND                                                                             APPELLEE


OPINION
AFFIRMING IN PART AND REVERSING AND REMANDING IN PART

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; ACREE AND TAYLOR, JUDGES.

CLAYTON, CHIEF JUDGE:  Michael Newman ("Newman"), Brian Raho

("Raho"), Anthony Sieg ("Sieg"), and Victory Gentry ("Gentry") appeal from the

Jefferson Circuit Court's opinion and order denying their motion for summary

judgment based upon qualified official immunity.  This interlocutory appeal is

properly before this Court to review Appellants' asserted claims of qualified official immunity. *See Breathitt County Bd. of Educ. v. Prater*, 292 S.W.3d 883, 886 (Ky. 2009).

Upon review of the applicable facts and law, we affirm the trial court's opinion and order as to Gentry's lack of entitlement to qualified immunity. However, we conclude that Newman, Raho, and Sieg were entitled to summary judgment based upon qualified official immunity. Accordingly, we reverse the Jefferson Circuit Court's opinion and order insofar as it denies their motions for summary judgment and remand this matter with instructions to enter judgment in favor of Newman, Raho, and Sieg based upon qualified official immunity.

## FACTUAL AND PROCEDURAL BACKGROUND

During the 2018-2019 school year, J.A. was a freshman at Western High School ("Western") in Jefferson County, Kentucky. Newman, Raho, and Sieg were principals at Western during the applicable period (Newman, Raho, and Sieg are referred to collectively herein as the "Principals"), and Gentry was J.A.'s teacher. J.A. received special education instruction and services pursuant to the Individuals with Disabilities Education Act ("IDEA") under an Individual Education Plan. J.A. spent most of the school day in two special classrooms; each had no more than ten students and was staffed with a teacher and two assistants.

All the students in the special classrooms, including J.A., were supervised at all times, including in the hallways and restrooms.

In his complaint, J.A. alleged that beginning in January 2019, another special needs student – G.S. – bullied him. More specifically, J.A. alleged that G.S. grabbed his genitals on two occasions, hit him in the face with a basketball, and intentionally tripped him in the hallway, causing him to fall and chip his teeth. Only certain incidents were reported after the fact by J.A.'s mother, S.A., allegedly either to Gentry or Raho.

On June 6, 2019, J.A., through S.A., filed a complaint. On June 19, 2019, J.A., through S.A., filed an amended complaint alleging the following claims: (1) Appellants failed to provide him with the opportunity to receive an adequate public education; (2) Appellants negligently supervised J.A.; (3) Appellants failed to follow Jefferson County Public School ("JCPS") policy regarding the reporting of bullying and harassment to the Superintendent and/or his or her designee; and (4) Appellants failed to provide J.A. with a free and appropriate public education pursuant to IDEA.

On November 5, 2020, Appellants filed a motion for summary judgment. On August 20, 2021, the trial court granted the motion in part and denied it in part. Specific to Appellants, the trial court denied their motion by

ruling that they were not entitled to qualified official immunity from suit. On September 8, 2021, Appellants filed this interlocutory appeal.

We will discuss further facts as they become relevant herein.

## ANALYSIS

### a. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure (CR) 56.03.

In the context of qualified official immunity, "[s]ummary judgments play an especially important role as the defense renders one immune not just from liability, but also from suit itself." *Ritchie v. Turner*, 559 S.W.3d 822, 830 (Ky. 2018) (internal quotation marks and citations omitted). An appeals court reviews the issue of whether a school official is entitled to qualified official immunity *de novo*. *Id.* (citation omitted).

### b. Discussion

#### 1. Qualified Official Immunity

As the Kentucky Supreme Court explained in *Yanero v. Davis*, when an officer or employee of the state or county is sued in his or her individual

capacity, that officer or employee is often entitled to qualified official immunity, "which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." 65 S.W.3d 510, 522 (Ky. 2001) (citation omitted). The application of qualified immunity "rests not on the status or title of the officer or employee, but on the function performed." *Id.* at 521 (citation omitted). Specifically, "the analysis depends upon classifying the particular acts or functions in question in one of two ways: discretionary or ministerial." *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010).

As explained in *Haney*:

Discretionary acts are, generally speaking, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment. It may also be added that discretionary acts or functions are those that necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of the performance of an act arises when the act may be performed in one or two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

*Id.* (internal quotation marks and citations omitted).

On the other hand, qualified immunity does not protect one who negligently performs, or fails to perform, a ministerial duty. *Patton v. Bickford*, 529 S.W.3d 717, 724 (Ky. 2016). "A ministerial duty is one that requires only

obedience to the orders of others." *Id*. (internal quotation marks and citation omitted). Put another way, "a duty is ministerial when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id*. (internal quotation marks and citation omitted).

In the public-school setting, the Kentucky Supreme Court has explained that a "special relationship" is formed between a Kentucky school district and its students compelled to attend school such that there is "an affirmative duty on the district, its faculty, and its administrators to take all reasonable steps to prevent foreseeable harm to its students." *Williams v. Kentucky Dep't of Educ.* 113 S.W.3d 145, 148 (Ky. 2003) (citations omitted).

Specifically, J.A. alleges that Appellants breached certain duties imposed by various statutes and school policies to supervise students and report bullying and sexual abuse. In response to the Appellants' contention that their alleged negligent conduct was discretionary and, therefore, that they are immune from suit, J.A. argues that the challenged conduct was ministerial in nature and not subject to the discretionary function exception.

## 2. The Principals

### a. Duty to Supervise

J.A. alleged in his complaint that the Principals had a duty to "ensure that teachers and staff . . . adequately supervised the students at the school so that the district's and school's policies were enforced[,]" and that the Principals "breached their duty to ensure the district's and school's policies were enforced . . . [.]"

Generally, a principal has a "duty to look out for the safety of the students[,]" which "is clearly discretionary in nature" and is "exercised most often by establishing and implementing safety policies and procedures." *Marson v. Thomason*, 438 S.W.3d 292, 300 (Ky. 2014). J.A. claims, however, that Appellants had a ministerial duty to supervise under both Kentucky Revised Statute ("KRS") 161.180 and the corresponding JCPS Policy 09.221.

Both KRS 161.180 and JCPS Policy 09.221 state, in relevant part, that "[e]ach . . . administrator in the public schools shall . . . hold pupils to a strict account for their conduct on school premises, on the way to and from school, and on school sponsored trips and activities." Nevertheless, the Kentucky Supreme Court stated in *Ritchie* that:

> [l]ike the general duty . . . to provide a safe school environment, the duty in KRS 161.180(1) [and] Policy 09.221 . . . to provide student supervision "is a *discretionary function* [*for school officials*] exercised

> most often by establishing and implementing [supervision] policies and procedures," which is qualitatively different from actually supervising the students, a ministerial duty for those who are assigned such supervision.

*Ritchie*, 559 S.W.3d at 832 (quoting *Marson*, 438 S.W.3d at 302) (emphasis added). As a result, neither KRS 161.180 nor JCPS Policy 09.221 created a ministerial duty of supervision on the part of the Principals.

Additionally, "[o]nce the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523 (citations omitted). In this case, the record indicates that J.A. produced no evidence that the Principals had not performed their discretionary duties in good faith. Instead, the evidence indicates that the Principals investigated and attempted to resolve the issues reported to them by S.A. and J.A. For example, the Principals reviewed videotapes and spoke with staff and other administrators in investigating S.A.'s allegations. Moreover, Principal Newman moved J.A. to another class to alleviate S.A.'s concerns. Thus, because the Principals' duties of supervision at issue herein were discretionary and performed in good faith, we find that they were entitled to qualified immunity.

### b. **Duty to Report**

In this case, the trial court relied on KRS 620.030(1) in declining to grant qualified immunity to the Principals. Specifically, the trial court found that KRS 620.030(1) created a ministerial duty on the part of the Principals. KRS 620.030(1) states that:

> [a]ny person who *knows or has reasonable cause to believe* that a child is dependent, neglected, or abused shall immediately cause an oral or written report to be made to a local law enforcement agency or to the Department of Kentucky State Police, the cabinet or its designated representative, the Commonwealth's attorney, or the county attorney . . .[.]

(Emphasis added.) As explained by the Kentucky Supreme Court, "[a] careful examination of KRS 620.030 makes clear that its framework for reporting cases of suspected child abuse includes elements of both ministerial and discretionary conduct." *Ritchie*, 559 S.W.3d at 837. Further, the *Ritchie* court noted that "[b]ecause few acts are ever purely discretionary or purely ministerial, our analysis considers the *dominant* nature of the act." *Id.* (internal quotation marks and citation omitted) (emphasis in original).

In cases where the alleged abuse was not actually observed by the official who failed to report such conduct, "KRS 620.030 first requires a baseline determination" as to whether "reasonable cause" exists "to believe abuse has occurred or [was] occurring[.]" *Id.* at 838. "To make that decision, the official

-9-

must do some investigation after a potential issue of abuse is brought to his or her attention; the requirement to investigate, to ascertain the facts, is plainly a ministerial function." *Id.* On the other hand, "[a]ssessing the information gathered from the investigation and making the actual determination of whether reasonable cause exists to believe abuse is occurring or has occurred . . . requires personal judgment, a discretionary function." *Id.* As a result, "[t]he dominant act in cases where the alleged abuse is not actually observed (or otherwise known with reasonable certainty) and an investigation is required to determine reasonable cause *is discretionary*." *Id.* (emphasis added) (footnote omitted).

In this case, the Principals conducted investigations into the allegations reported to them but could not substantiate harassment, bullying, or sexual abuse. However, as discussed in *Ritchie*,

> KRS 620.030's reporting requirement involves a discretionary action when a school official or other individual is determining whether there is "reasonable cause to believe" that a child has been or is being abused. Disagreement as to the determination reached by the school officials in the good faith exercise of their judgment will not expose the school officials to personal liability.

559 S.W.3d at 839.

Moreover, the trial court cited the Principals' failure to report J.A.'s allegations of assault under JCPS Policy 09.42811. However, the introductory language of the JCPS Policy – "Employees *who believe* prohibited behavior is

-10-

occurring or has occurred" – mirrors the introductory language of KRS 620.030(1) – "Any person who knows or has reasonable cause to believe[.]" (Emphasis added.) Thus, the JCPS Policy's reporting requirement is "triggered only when an employee has formed a subjective belief that harassment/discrimination has occurred." *Doe v. Logan*, 602 S.W.3d 177, 187 (Ky. App. 2020).

### 3. **Teacher Gentry**

On the other hand, Gentry – as J.A.'s teacher – was tasked not with the promulgation of policy but with its enforcement. The Kentucky Supreme Court has repeatedly held that "a teacher's duty to supervise students is ministerial, as it requires enforcement of known rules." *Marson*, 438 S.W.3d at 301 (citations omitted). A teacher's duty to report bullying is also ministerial. *Patton*, 529 S.W.3d at 728.

Here, any potential liability on the part of Gentry must stem from his assigned responsibilities, which included the ministerial duty to supervise students. Moreover, Gentry's duty to report bullying was also ministerial. Thus, he "lack[s] the protection of qualified immunity." *Id.* Of course, that is not to say that Gentry is liable or does not have defenses, but simply that he does not have qualified immunity from suit as a matter of law. *Id.*

## CONCLUSION

For the foregoing reasons, the Jefferson Circuit Court's order is affirmed in part, reversed in part, and remanded with directions to enter summary judgment in favor of the Principals based on qualified immunity.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Mark S. Fenzel
Kevin L. Chlarson
Louisville, Kentucky

BRIEF FOR APPELLEE:

Dr. Kenneth J. Henry
Louisville, Kentucky