**BREATHITT COUNTY BOARD OF EDUCATION, Appellant**

**v.**

**Dot PRATER, Appellee.**

**No. 2008–SC–000041–DG.**

Supreme Court of Kentucky.

Aug. 27, 2009.

Michael J. Schmitt, Jonathan C. Shaw, Porter, Schmitt, Banks & Baldwin, Paintsville, KY, Counsel for Appellant.

Hershel Branson, Jr., Jackson, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

This case presents the opportunity to address whether Kentucky's appellate courts have jurisdiction to consider an appeal from an interlocutory order denying a motion to dismiss or motion for summary judgment premised on the movant's claim of absolute immunity. If there is appellate jurisdiction to address such rulings, we must also consider whether the Court of Appeals erred in this case by ruling that the Breathitt County Board of Education is not immune from the personal injury claims brought by Appellee Dot Prater, an individual injured at a residence owned by

the Board and located on school grounds. We agree with the Court of Appeals that its jurisdiction was properly invoked to address the Board's immunity claim, a substantial claim that would be stripped of meaningful review if the Board were obliged to forego appellate consideration until after it had borne all the costs and inconveniences of trial. On the merits, however, we are convinced that both the trial court and Court of Appeals erred by denying the Board's immunity in this case, and so remand for an order dismissing Prater's complaint.

## RELEVANT FACTS

The record indicates that in October 2004, the Board formally agreed, as part of an employment contract, to allow Mary Caudill to reside "in the house located directly behind Marie Roberts–Caney Elementary School" in Jackson, Kentucky, in exchange for Caudill's security services at the school "seven nights a week" and such grounds maintenance ("weed trimming, snow removal, etc.") as requested by the school principal. The residence belongs to the Board and is located on the Board's elementary school property. In a June 2006 suit against the Board, Caudill's friend, Prater, alleged that while visiting Caudill at her residence in June 2005, a "structure" collapsed causing Prater to fall and suffer permanent injury. Prater's complaint asserts that the Board was negligent in its maintenance of Caudill's residence.

Before answering the complaint, the Board filed a timely motion to dismiss on the ground that it is absolutely immune from damages claims brought in court, as opposed to the Board of Claims. Denying the motion, the trial court ruled that the Board's maintenance of the Caudill residence served a proprietary rather than a governmental function and so did not come within the scope of the Board's immunity.

The Board appealed to the Court of Appeals, where a divided court agreed with the trial court that the Board's provision of housing to a night watchperson did not serve "a governmental function of a typical school board," and so upheld the trial court's denial of the Board's motion to dismiss. The dissenting judge opined that the securing of Board property did serve a governmental function for which the Board was entitled to immunity.

Before reaching the merits of the Board's appeal, the Court of Appeals correctly noted that generally our appellate courts have jurisdiction only over "final" judgments and orders and that orders denying motions to dismiss, like orders denying motions for summary judgment, are not final and thus generally do not give rise to appellate jurisdiction. Nevertheless, the court concluded that its jurisdiction had been properly invoked in this case because, unlike other defenses, immunity is meant to provide not merely a shield against liability but a shield against the expense and potential harassment of trial as well. A trial court's order denying immunity would prove effectively unreviewable on appeal from a final judgment, the court noted, because by that time the movant's interest in avoiding litigation would be lost beyond the appellate court's ability to provide a meaningful remedy. For this reason, the Court of Appeals concluded that an interlocutory appeal was appropriate and that it had authority to address the Board's appeal.

## ANALYSIS

**I. The Denial Of A Substantial Claim Of Absolute Immunity Entitles The Claimant To An Immediate Appeal.**

■ Neither party sought discretionary review of the Court of Appeals' jurisdic-

tional analysis, but because appellate jurisdiction cannot be conferred by consent of the parties, "[t]his Court must determine for itself whether it has jurisdiction." *Wilson v. Russell*, 162 S.W.3d 911, 913 (Ky. 2005). Accordingly, we turn first to the propriety of the Board's appeal of the interlocutory order denying recognition of its claimed immunity.

■ As the Court of Appeals noted, CR 54.01 limits "appealable judgment[s]" to "final order[s] adjudicating all the rights of all the parties in an action or proceeding[.]" There are exceptions to this final judgment rule, however. In cases involving multiple claims or multiple parties, for example, CR 54.02 permits the trial court to designate as "final" and hence appealable a "judgment upon one or more but less than all of the claims or parties" upon a determination that "there is no just reason for delay." CR 65.07 permits an interlocutory appeal from an order "grant[ing], den[ying], modif[ying], or dissolve[ing] a temporary injunction[.]" KRS 22A.020(4) permits the Commonwealth an interlocutory appeal under certain circumstances in criminal cases. KRS 417.220 permits an interlocutory appeal from "[a]n order denying an application to compel arbitration...." And in *Asset Acceptance LLC v. Moberly*, 241 S.W.3d 329, 334–35 (2007),[1] we held

> an order setting aside a judgment more than a year old pursuant to the "reason for an extraordinary nature" provision of CR 60.02(f) is subject to immediate appellate review to ensure that CR 60.02(f) has not been invoked to, in effect, evade the one-year limitations period CR 60.02

imposes on claims appropriately regarded as falling under CR 60.02(a), (b), or (c).

■ Except for CR 54.02, which permits certain interlocutory appeals that promote judicial economy, these examples are all provisions authorizing interlocutory appeals to address substantial claims of right which would be rendered moot by litigation and thus are not subject to meaningful review in the ordinary course following a final judgment. We agree with the Court of Appeals that orders denying claims of immunity raise this same concern and likewise should be subject to prompt appellate review.

■ As we observed recently in *Rowan County v. Sloas*, 201 S.W.3d 469 (Ky. 2006), immunity entitles its possessor to be free "from the burdens of defending the action, not merely ... from liability." *Id.* at 474. *See also Lexington–Fayette Urban County Government v. Smolcic*, 142 S.W.3d 128, 135 (Ky.2004). ("Immunity from suit includes protection against the cost of trial and the burdens of broad-reaching discovery that are peculiarly disruptive of effective government.") (citation and internal quotation marks omitted). Obviously such an entitlement cannot be vindicated following a final judgment for by then the party claiming immunity has already borne the costs and burdens of defending the action. For this reason, the United States Supreme Court has recognized in immunity cases an exception to the federal final judgment rule codified at 28 U.S.C. § 1291. In *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d

---

1. We are fully aware of KRS 22A.020(2) which states that the Court of Appeals "has jurisdiction to review interlocutory orders of the Circuit Court in civil cases, but only as authorized by rules promulgated by the Supreme Court." Rules are "promulgated" when they are "put ... into effect by formal public announcement." *The American Heritage Dictionary of the English Language* (4th ed. 2006). Thus, we construe KRS 22A.020(2) to encompass both the Kentucky Rules of Civil Procedure and the "rules" or rulings of the Supreme Court of Kentucky announced in published decisions.

411 (1985), the Court reiterated its position that "the denial of a substantial claim of absolute immunity is an order appealable before final judgment." *Id.* at 525, 105 S.Ct. 2806, *citing Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). We find the Supreme Court's reasoning persuasive, and thus agree with the Court of Appeals that an order denying a substantial claim of absolute immunity is immediately appealable even in the absence of a final judgment.

## II. The Board's Provision Of Housing To Its Night Watchperson Was A Governmental Function Entitling It To Immunity.

Turning to the merits of the Board's immunity claim, we note first that an agency of the state government enjoys what is termed "governmental immunity" from civil damages actions. *Yanero v. Davis,* 65 S.W.3d 510 (Ky.2001). Governmental immunity, as explained in *Yanero,* is a public policy, derived from the doctrine of sovereign immunity, which is premised on the notion "that courts should not be called upon to pass judgment on policy decisions made by members of coordinate branches of government in the context of tort actions, because such actions furnish an inadequate crucible for testing the merits of social, political or economic policy." 65 S.W.3d at 519. Given this underpinning, governmental immunity shields state agencies from liability for damages only for those acts which constitute governmental functions, *i.e.,* public acts integral in some way to state government. *Id.* The immunity does not extend, however, to agency acts which serve merely proprietary ends, *i.e.,* non-integral undertakings of a sort private persons or businesses might engage in for profit. *Id.* Under these rules, we have held that

[a] board of education is an agency of state government and is cloaked with governmental immunity; thus, it can only be sued in a judicial court for damages caused by its tortious performance of a proprietary function, but not its tortious performance of a governmental function, unless the General Assembly has waived its immunity by statute.

*Grayson County Board of Education v. Casey,* 157 S.W.3d 201, 202–03 (Ky.2005). There being no suggestion of waiver in this case, the question is simply whether the Board's provision of on-site housing for its night watchperson is appropriately characterized as governmental or proprietary.

As we acknowledged in *Yanero,* this distinction is sometimes difficult to draw, but in recent cases we have held that education is an integral aspect of state government and that activities in direct furtherance of education will be deemed governmental rather than proprietary. In *Withers v. University of Kentucky,* 939 S.W.2d 340 (Ky.1997), for example, we held that notwithstanding the fact that the University of Kentucky Medical Center competes with private hospitals, its essential role in the teaching mission of the University of Kentucky College of Medicine rendered its activities governmental. In *Yanero* itself, we held that interscholastic athletics contributed substantially to the educational purposes of the secondary schools and thus that a school board performed a governmental function when it authorized such athletics at its schools. 65 S.W.3d at 527. Similarly, in *Autry v. Western Kentucky University,* 219 S.W.3d 713 (Ky.2007), we held that WKU's provision of dormitory housing for its students constituted a governmental function, not a proprietary one: "Other providers of housing do so as a business, for profit; WKU does so as part of its definitive function. Viewed in this light, WKU clearly is entitled to

governmental immunity." 219 S.W.3d at 718.

In this case, too, the Board provided housing for its night watchperson, on school premises, not to raise revenue or to participate in the local housing market, but to further its educational mission by protecting the facilities where that mission is carried out. Furthermore, as the Board aptly notes, even if the relationship between building and property maintenance and the public school educational function was uncertain, KRS 160.290(1) expressly provides that the Board "shall have control and management" of all school property "to promote public education." The Board's employment of a night watchperson to reside on school grounds falls within the management discretion conferred by that statute and directly serves the Board's definitive educational function. Because the Board was engaged in a governmental rather than a proprietary function, it is entitled to immunity from damages claims arising from that function. The trial court and the Court of Appeals erred by ruling otherwise.

### CONCLUSION

In sum, unlike other defenses, immunity is meant to shield its possessor not simply from liability but from the costs and burdens of litigation as well. An order denying a substantial claim of immunity is not meaningfully reviewable, therefore, at the close of litigation, and that fact leads us to conclude, as has the Supreme Court of the United States, that an interlocutory appeal is necessary in such cases notwithstanding the general rule limiting appellate jurisdiction to "final" judgments. Although we thus agree with the Court of Appeals that it had jurisdiction to consider the Board's appeal, we are convinced that the courts below erred by ruling that the Board was not immune from Appellee Prater's civil damages action. The Board's provision of housing for its night watchperson was a governmental act in direct furtherance of its educational purpose and thus comes within the scope of the Board's governmental immunity. Accordingly, we reverse the Opinion of the Court of Appeals and remand to the Breathitt Circuit Court for an order dismissing the complaint.

All sitting. MINTON, C.J.; CUNNINGHAM, NOBLE, SCHRODER, and SCOTT, JJ., concur.

VENTERS, J., dissents by separate opinion.

VENTERS, J., dissenting.

I respectfully dissent. The residence provided by the Board of Education for a maintenance employee is not connected to the governmental function of educating children. The majority relies upon previous decisions of this Court wherein the activity in question was essential to the core governmental function of public education. In *Withers,* we noted that the University of Kentucky Medical Center's essential mission was to teach medical students. In *Yanero,* we recognized the educational purpose of an interscholastic athletics program. In *Autry,* we recognized that dormitory housing for students was an essential part of Western Kentucky University's duty to educate college students. Maintaining the personal, private house for the use of the school maintenance worker and her social guests has nothing to do with the school district's educational mission. The keeping of that house is a purely proprietary function, and the alleged failure to maintain that property in a safe condition should not be cloaked with governmental immunity.