RENDERED:  MARCH 20, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0142-DG
2023-SC-0383-DG

BOARD OF EDUCATION OF PARIS,        APPELLANT/CROSS-APPELLEE
KENTUCKY

|  | ON REVIEW FROM COURT OF APPEALS |
|---|---|
| V. | NO. 2021-CA-0788 |
|  | FRANKLIN CIRCUIT COURT NO. 21-CI-00493 |

JASON EARLYWINE        APPELLEE/CROSS-APPELLANT

**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>AFFIRMING IN PART, REVERSING IN PART, AND REMANDING</u>**

This case is before the Court upon discretionary review from the Court of Appeals' decision which held the Board of Education of Paris Independent School District's (BEP) employment contract with Jason Earlywine was within the waiver of immunity for written contracts contained in KRS[1] 45A.245(1). The Court of Appeals then concluded, however, that Earlywine's failure to exhaust his administrative remedies deprived the judiciary of subject matter jurisdiction. Upon review, we affirm Boards of Education are departments or agencies of the Commonwealth pursuant to KRS 45A.240(1) and KRS 45A.245(1). We reverse the conclusion Earlywine failed to exhaust his administrative remedies. Whether administrative remedies have been

---

[1] Kentucky Revised Statutes

exhausted is a rule subject to several exceptions. The Court of Appeals erred taking up this question on an interlocutory appeal. We, therefore, remand this case to Franklin Circuit Court for further proceedings consistent with this opinion.

## I. Facts and Procedural Posture

Earlywine was employed as a teacher by BEP between August 2007 and June 2019. In 2011, a student accused him of inappropriate conduct. Earlywine was placed on paid administrative leave on November 9, 2011. In June 2012, then-Superintendent Gary Wise placed Earlywine on unpaid administrative leave stemming from the same accusation. A single count of Sexual Abuse in the First Degree was brought against Earlywine. The criminal case went to trial in January 2015 and was resolved in Earlywine's favor when the trial court granted him a directed verdict. Earlywine's charge and all related proceedings were subsequently expunged. He was restored to teaching status on February 2, 2015, then terminated in 2019 for unknown reasons.

Earlywine filed suit against BEP in 2020 to recover lost wages from the time period during which he was on unpaid administrative leave.[2] BEP filed a motion to dismiss alleging both governmental immunity and failure to exhaust administrative remedies. The Bourbon Circuit Court, where this action was originally filed, determined BEP was within the waiver of KRS 45A.245(1). It further held it was an inappropriate venue pursuant to that same statute,

---

[2] The trial court noted, however, that Earlywine had claimed he was owed backpay after his case was dismissed in 2015. At that time BEP responded that he had failed to exhaust his administrative remedies.

2

which directs such suits to be filed in Franklin Circuit Court. The case was transferred, and an appeal was taken solely on the issue of whether BEP possessed governmental immunity.

The Court of Appeals ruled, first, that BEP's governmental immunity is waived by KRS 45A.245(1), citing our decision of *University of Louisville v. Rothstein*, 532 S.W.3d 644, 647 (Ky. 2017). Curiously, however, the Court of Appeals then took up the issue of subject matter jurisdiction. It reasoned that "immunity for liability on a contract between the Board and Earlywine has been waived by a more specific and limiting statutory enactment by the General Assembly[,]" namely, KRS 161.790. Broadly, this statute mandates that a teacher who is terminated or sanctioned with a lesser penalty, such as suspension without pay, must within ten days of receiving notice of the sanction declare whether he or she will dispute it. *Id.* at (3) and (10). A tribunal is then appointed by the Commissioner of Education to adjudicate the dispute. *Id.* at (4)-(7). It is undisputed that Earlywine never availed himself of this process. Therefore, the Court of Appeals concluded "the General Assembly withheld subject matter jurisdiction from the circuit court to hear Earlywine's breach of contract claim seeking the wages not paid during his suspension if the requirements of KRS 161.790 had not been satisfied."

Both parties filed motions for discretionary review, and both were granted. The Court of Appeals' decision has forced this Court to resolve a paradox. In concluding there is a lack of subject matter jurisdiction, the lower court effectively negated its own opinion regarding KRS 45A.245; it rendered it

3

entirely *dicta* and merely advisory. This is because a court that lacks subject matter jurisdiction "has not been given any power to do anything at all[.]" *Duncan v. O'Nan*, 451 S.W.2d 626, 631 (Ky. 1970) (quoting *In re Rougeron's Est.*, 17 N.Y.2d 264, 271, 217 N.E.2d 639, 643 (1966)). How then could the Court of Appeals purport to authoritatively determine the question of governmental immunity under KRS 45A.245(1)? On the other hand, governmental immunity provides agencies of the Commonwealth with protection not merely from liability, but from defending the action as such. If an agency is entitled to governmental immunity, it does not have to spend any more time or money in litigation than is necessary to prove the entitlement. *Breathitt Cnty. Bd. of Ed. v. Prater*, 292 S.W.3d 883, 886 (Ky. 2009).

Thus, the conundrum of the Court is if we decline to consider the question of immunity and reverse on the jurisdictional question, then BEP could claim that it is being unjustly deprived of its immunity from suit and being compelled to undergo further litigation which its immunity is intended to prevent. But if we decline to consider the jurisdictional issue, and affirm the decision on immunity, BEP could then claim that our decision is *void ab initio*. *See Commonwealth Health Corp. v. Croslin*, 920 S.W.2d 46, 48 (Ky. 1996). Indeed, even if we reverse on the issue of immunity and hold BEP is entitled to governmental immunity, that still leaves open the question of our jurisdiction to make such a ruling. And if we affirm on the jurisdictional issue (and therefore decline to speak on immunity), then BEP can claim we avoided the immunity question which is, truthfully, the entire reason this Court has any

4

jurisdiction whatsoever, given that this is an interlocutory appeal. *Prater*, 292 S.W.3d at 886-887.

We conclude the resolution is found, first, in our undisputed authority to determine questions of immunity on interlocutory appeal. *Prater*, 292 S.W.3d at 887. This rule precludes consideration of any other question at the appellate court other than immunity. Second, the rule requiring exhaustion of administrative remedies while precluding subject matter jurisdiction is subject to several exceptions, both those recognized in Kentucky and those recognized in other jurisdictions. Earlywine is entitled to argue either a recognized exception applies, or that a heretofore unrecognized exception in Kentucky should be adopted and applied to his case. Since our review of these questions is *de novo*, we proceed to our analysis. *Northern Ky. Water Dist. v. Carucci*, 600 S.W.3d 240, 243 (Ky. 2019) (denial of claim of governmental immunity subject to *de novo* review); *Appalachian Reg'l Healthcare, Inc. v. Coleman*, 239 S.W.3d 49, 53-54 (Ky. 2007) (jurisdiction is a question of law reviewed *de novo*); *Commonwealth v. Moore*, 545 S.W.3d 848, 850 (Ky. 2018) (interpretation of statutes subject to *de novo* review).

## II. Analysis
### A. Jurisdiction over Interlocutory Appeals Concerning Immunity

Our authority to hear interlocutory appeals to determine questions of entitlement to immunity is sound and has not been questioned by either party. *Prater*, 292 S.W.3d at 887. Because immunity absolves its possessor from the necessity of enduring the vicissitudes of litigation, "such an entitlement cannot

5

be vindicated following a final judgment for by then the party claiming immunity has already borne the costs and burdens of defending the action." *Id.* at 886. To await a final judgment renders immunity moot and the question of its existence incapable of meaningful review. *Id.*

### B. Exhaustion of Administrative Remedies

The first issue we must address is the Court of Appeals' conclusion that Earlywine's failure to exhaust his administrative remedies deprived the circuit court of subject matter jurisdiction. We understand the Court of Appeals' reasoning as there are several published cases from this Court supporting it. In *Commonwealth v. DLX, Inc.*, we affirmed a circuit court's conclusion that it lacked subject matter jurisdiction due to failure to exhaust administrative remedies. 42 S.W.3d 624, 627 (Ky. 2001). In *Popplewell Alligator Dock No. 1, Inc. v. Revenue Cab.*, we reaffirmed that holding. 133 S.W.3d 456, 472 (Ky. 2004). In *Kentucky State Police v. Scott*, after noting three exceptions to the rule—futility of the administrative process, direct judicial review authorized by statute, or a facial constitutional challenge—we stated, "[i]f none of these exceptions apply, then the court is deprived of subject matter jurisdiction." 529 S.W.3d 711, 716 (Ky. 2017). We have also recognized "that defects in subject matter jurisdiction may be raised by the parties or the court at any time and cannot be waived." *Croslin*, 920 S.W.2d at 47.

While all this is generally true, the matter is different where an appellate court's jurisdiction is established on interlocutory appeal to review a denial of a claim of immunity. *Prater*, 292 S.W.3d at 887. In *Hensley v. Haynes Trucking,*

6

*LLC*, the Court was considering whether the trial court properly certified a class-action suit, which we stated is an appropriate question for interlocutory appeal. 549 S.W.3d 430, 438-39 (Ky. 2018). But the Appellants asked a separate question: "Does the trial court have the requisite subject-matter jurisdiction over the claims of some of the purported class members?" *Id.* at 438. We held this question, though concerning subject matter jurisdiction, was not properly before the Court on interlocutory appeal. *Id.* at 439. The question

> essentially asks whether the trial court improperly asserted subject-matter jurisdiction over *some* of the claims of some of the plaintiffs in this case. Answering this question would be an inappropriate extension of the issues Kentucky appellate courts can reach on interlocutory appeal. A defendant cannot challenge a trial court's subject-matter jurisdiction over a claim, *in and of itself,* on interlocutory appeal.

*Id.* In this case, BEP is challenging the subject matter jurisdiction of the trial court over Earlywine's claim in and of itself by virtue of non-exhaustion of administrative remedies.[3]

Subject matter jurisdiction is an issue readily addressed "before the trial court and, if unsuccessful at the trial court level, ultimately *in the normal appellate process.*" *Id.* (emphasis added). Not only is such an issue capable of resolution via direct appeal, but it is also subject to determination by a higher court via a writ of prohibition. CR 81; *Spears v. Goodwine*, 490 S.W.3d 347,

---

[3] Although unpublished, we have held the question of exhaustion of administrative remedies is a jurisdictional fact to be determined first by the trial court. *Com., Fin. & Admin. Cabinet, Dep't of Revenue v. Hagerman*, No. 2013-SC-000624-MR, 2014 WL 4656824, at *3 (Ky. Sept. 18, 2014). *See also Hampton v. Intech Contracting, LLC*, 581 S.W.3d 27, 34 (Ky. 2019).

351-52 (Ky. 2016). Kentucky law provides a clear and coherent system for addressing issues of subject matter jurisdiction and of immunity; each are distinct and not to be commingled. There is no compelling reason to allow a question of subject matter jurisdiction to be raised or addressed on interlocutory appeal. The Court of Appeals erred in so doing. As we have said elsewhere,

> A court can only address the issues presented in the interlocutory appeal itself, nothing more. Otherwise, interlocutory appeals would be used as vehicles for bypassing the structured appellate process. Specifically, this means, and we hold, that an appellate court reviewing an interlocutory appeal of a trial court's determination of a defendant's immunity from suit is limited to the specific issue of whether immunity was properly denied, nothing more.

*Baker v. Fields*, 543 S.W.3d 575, 578 (Ky. 2018).

Consequently, the paradox this Court faces is resolved. Under the authority of *Hensley* and *Fields*, the Court of Appeals had no jurisdiction to consider—much less raise *sua sponte*—the issue of the trial court's subject matter jurisdiction over the claim itself on an interlocutory appeal regarding only a question of immunity. It is true we have said, "[s]ubject matter jurisdiction cannot be waived or conferred by agreement, and a party may challenge a court's lack of subject matter jurisdiction any time, even for the first time on appeal." *Commonwealth v. B.H.*, 548 S.W.3d 238, 245 (Ky. 2018). But that rule must be understood in its context. It means nothing more than a challenge to a trial court's subject matter jurisdiction is not constrained by the normal rule requiring preservation of arguments at the trial court before being considered on appellate review. The rule implicitly assumes the normal

8

appellate procedure is otherwise being followed. It does not mean an appellate court may raise or consider subject matter jurisdiction on interlocutory appeal for the simple reason that "[a] trial court erroneously assuming subject-matter jurisdiction over a claim in and of itself is not an immediately appealable issue." *Hensley*, 549 S.W.3d at 439.

Secondarily, Earlywine's argument regarding the failure to exhaust administrative remedies is bound up with his argument that the Superintendent failed to comply with the notice requirements of KRS 161.790(3). While this Court has never held lack of notice can excuse recourse to administrative remedies or leaves the time to file an appeal untolled, there is some law in other contexts that would seem to support it. *See generally Lacy v. Fulbright & Jakworski*, 405 F.3d 254, 257 n.5 (5th Cir. 2005) (collecting cases in context of ERISA claims); *Ross v. United States Postal Service*, 696 F.2d 720, 722 (9th Cir. 1986) (addressing rule in context of employment discrimination); *Sewak v. Immigr. and Nationalization Serv.*, 900 F.2d 667, 670 (3rd Cir. 1990) (addressing rule in context of immigration appeals). We do not at all suggest that we would adopt this rule nor are we directing the trial court to decide one way or another. There may be sound arguments against adopting this rule or applying it to this case.

It is clear, however, that neither Earlywine nor BEP addressed this issue in their briefing to the Court of Appeals. They were in fact properly instructed to brief only the immunity question. Thus, the Court of Appeals' *sua sponte* action deprived Earlywine of being able to make an argument in his own

9

defense. Because exhaustion of administrative remedies is subject to exceptions, a party is entitled to the opportunity to at least make their argument that such and such exception is applicable. Earlywine was denied that opportunity at the Court of Appeals. Therefore, the proper resolution in this case is to remand to the trial court for further proceedings. The only portion of the Court of Appeals' opinion that it had authority to render is its ruling that BEP is subject to KRS 45A.245(1)'s waiver of immunity.

### C. Boards of Education are Included in KRS 45A.245(1)'s Waiver

In arguing before this Court that Boards of Education are not included within KRS 45A.245(1)'s waiver of immunity for written contracts, BEP argues the provisions surrounding KRS 45A.245 all demonstrate that it was only meant to apply to contracts overseen by the Finance and Administration Cabinet, therefore, it does not apply to school boards. It also points to the definitions of several words in the Kentucky Model Procurement Code (KMPC) which it contends this Court has hitherto failed to consider. Secondly, BEP has highlighted what it believes to be a differing definition of "local public agency" found in KRS 45A.345(11) that applies to school boards, thereby distinguishing it from the "Commonwealth" as used in KRS 45A.245(1). Finally, having made these arguments, BEP makes the logical conclusion and requests that we overrule our decision in *Rothstein.* Though we conclude *Rothstein* is correct, BEP's arguments deserve attention and inquiry. Therefore, we will investigate the KMPC, and its interaction with KRS 161.790.

The KMPC became law in 1979 with the general purpose of bringing uniformity, consistency, clarity, fairness, and economy to "the law governing purchasing by the Commonwealth[.]" KRS 45A.010(2)(a). It "shall apply to every expenditure of public funds by this Commonwealth . . . excepting only that this code shall not apply to contracts or like business agreements between the Commonwealth and its political subdivisions or other governments, except as provided in KRS 45A.295 to 45A.320." KRS 45A.020(1). Under the entirety of KMPC, "'Contract' means all types of state agreements, including grants and orders, for the acquisition, purchase, or disposal of supplies, services, construction, or any other item." KRS 45A.030(8). Services under this definition "means the rendering by a contractor of its time and effort rather than the furnishing of a specific end product, other than reports that are merely incidental to the required performance of services[.]" *Id.* at (27). A contractor is "any person having a contract with a governmental body[,]" *id.* at (10), while an employee is "an individual drawing a salary from a governmental body, whether elected or not, and any nonsalaried individual performing personal services for any governmental body[.]" *Id.* at (16).

KRS 45A.040 through KRS 45A.067, generally, establishes the Finance and Administration Cabinet's authority over procurement in the Commonwealth. We then encounter the first notable feature of the KMPC which is KRS 45A.070, establishing applicable definitions for KRS 45A.070 through KRS 45A.180; those provisions pertaining generally to the bidding for and awarding of contracts. We call this feature notable because at several other

11

points the KMPC will do the same thing—it will provide a specific set of definitions whose applicability is limited only to a specific number of provisions.[4] Indeed, the same word can mean two different things under the KMPC depending on which provision it is meant to apply. KRS 45A.030(27) (defining "services" generally); *cf.* KRS 45A.465(4) (defining "services" for KRS 45A.470); KRS 45A.030(4) (defining "construction" generally); *cf.* KRS 45A.345(4) (defining "construction" for KRS 45A.343 through KRS 45A.460).

We next encounter this feature in KRS 45A.225(2), which states, "KRS 45A.225 to 45A.290 apply only to each contract solicited or entered into after January 1, 1979." These provisions generally apply to how contract disputes are to be handled first, administratively then with recourse to the judiciary. The immediately following provision states,

> Prior to the institution of any action in a court concerning any contract, claim, or controversy, the secretary of the Finance and Administration Cabinet is authorized, subject to any limitations or conditions imposed by regulations, to settle, compromise, pay, or otherwise adjust the claim by or against, or controversy with, a contractor relating to a contract entered into by the Finance and Administration Cabinet on behalf of the Commonwealth or any state agency, including a claim or controversy based on breach of contract, mistake, misrepresentation, or other cause for contract modification or rescission, but excluding any claim or controversy involving penalties or forfeitures prescribed by statute or regulation where an official other than the secretary of the Finance and Administration Cabinet is specifically authorized to settle or determine such controversy.

---

[4] *See* KRS 45A.095 (definitions for that section); KRS 45A.096 (definitions for that section and KRS 45A.097); KRS 45A.295 (definitions for that section through KRS 45A.320); KRS 45A.335 (definitions for KRS 45A.330 through KRS 45A.340); KRS 45A.345 (definitions for KRS 45A.343 through KRS 45A.460); KRS 45A.465 (definitions for KRS 45A.470); and KRS 45A.487 (definitions for that section and KRS 45A.488).

KRS 45A.230. "This section shall apply to a claim or controversy arising under contracts between the Commonwealth and its contractors. If such a claim or controversy is not resolved by mutual agreement, the secretary of the Finance and Administration Cabinet, or his designee, shall promptly issue a decision in writing." KRS 45A.235.

> Any person, firm or corporation, having a lawfully authorized written contract with the Commonwealth at the time of or after June 21, 1974, may bring an action against the Commonwealth on the contract, including but not limited to actions either for breach of contracts or for enforcement of contracts or for both. Any such action shall be brought in the Franklin Circuit Court and shall be tried by the court sitting without a jury. All defenses in law or equity, except the defense of governmental immunity, shall be preserved to the Commonwealth.

KRS 45A.245(1). We have held this last provision "is an unqualified waiver of immunity in all cases based on a written contract with the Commonwealth, including but not limited to employment contracts." *Rothstein*, 532 S.W.3d at 647.

BEP argues our holding in *Rothstein* is flawed by failing to take into account the statutory definitions of "contract," "contractor," and "employee" quoted above. To summarize, BEP contends if a teacher has a contract within the meaning of KRS 45A.030(8), then it is one for services. But services are explicitly defined and limited to "the rendering by a contractor of its time and effort[.]" *Id.* at (27). Because there is a distinction between a contractor and employee within the KMPC, a teacher is not a contractor but an employee. Therefore, the "written contract" referred to in KRS 45A.245(1) is limited to a contract with a contractor, not a contract with an employee. The preceding

13

provisions of the KMPC, beginning with KRS 45A.225 quoted above, would seem to support the contention.

Upon investigation, however, we note the KMPC generally applies to every expenditure of public funds, KRS 45A.020(1), and teacher salaries are distributed from the common school funds. KRS 157.010; KRS 157.075. Contracts, as defined, first means "all types of state agreements," and then goes on to list several specific types of agreements included in the definition.

> The rule of *ejusdem generis* is that where, in a statute, general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be restricted by the particular designation, and to include only things or persons of the same kind, class or nature as those specifically enumerated, unless there is a clear manifestation of a contrary purpose.

*Mills v. City of Barbourville*, 117 S.W.2d 187, 188 (Ky. 1938) (quoting *Fed. Chem. Co. v. Paddock*, 94 S.W.2d 645, 649 (Ky. 1936)). The rule has no application here because the general term "all types of state agreements" comes first in the definition, followed by specific enumerations; not vice-versa. Moreover, "*ejusdem generis* is but a rule of construction and will not be applied or resorted to in the construction of statutes, if the intention of the statute is clear." *Id.* We see no need to resort to it in any event because the phrase "all types of state agreements" is unambiguous in its comprehensiveness. Thus, while KRS 45A.030(27)'s definition of "services" does apply to KRS 45A.030(8), it does not modify in any way the phrase "all types of state agreements". Therefore, a teacher's employment contract is an agreement with the State from which he or she is paid by an expenditure of public funds.

14

Next, we look to Justice Noble's dissent in *Furtula v. University of Kentucky*, 438 S.W.3d 303 (Ky. 2014). In that case it was "argued that state-university employees are not hired under the Code because their 'contracts,' though arguably for 'services,' cannot be, 'contracts' as defined in the Code." *Id.* at 318 (Noble, J., dissenting). Justice Noble resolved this argument by applying the general/specific canon of statutory construction; opining that KRS 164.220-225, giving the Board of Trustees exclusive control of hiring employees, was specific over KRS 45A.050, giving general authority under the code to the Finance and Administration Cabinet. *Id.*

> There is no conflict between the definition of "contract" and the waiver of sovereign immunity for contract actions in KRS 45A.245, on the one hand, and the statutes controlling state universities and allocating power to their boards of trustees on the other . . . while the University is not subject to many provisions of the Code when it comes to hiring employees, it is subject to any other provision of the Code that does not create a conflict.

*Id.* at 319. Justice Noble then recounted the history of KRS 45A.245(1), *id.* at 319-20, which this Court embraced in *Rothstein,* 532 S.W.3d at 648-51. We will not retread well-trodden ground. We have unambiguously embraced the position that KRS 45A.245(1) is a re-enactment without any substantial change of KRS 44.270; that former statute being "a waiver of the defense of governmental immunity to all claims based upon lawfully authorized written contracts with the Commonwealth, specifically including written employment contracts within this waiver." *Id.* at 651 (citing *University of Louisville v. Martin,* 574 S.W.2d 676, 679 (Ky. App. 1978)). We have explicitly put the onus upon the General Assembly to amend this statute if it believes our interpretation is

15

incorrect. The General Assembly's failure to alter the language of KRS 45A.245(1) implies its approval of the construction of its language by the courts of the Commonwealth since *Martin* almost fifty years ago. *Id.*

The argument of BEP, therefore, that *Rothstein* ought to be overruled will not prevail. As our earliest predecessors stated, "whatever might be the opinion of the court, was the question new, this court can not depart from the former adjudications, and conceives the matter ought to be at rest." *South's Heirs v. Thomas' Heirs*, 23 Ky. 59, 62 (1828). It is well-recognized that in decisions of statutory interpretation that have the weight of time and multiple rulings attached to it, *stare decisis* is at its strongest. "If only a question of statutory construction were involved, we should not be prepared to abandon a doctrine so widely applied throughout nearly a century." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 77 (1938). The construction upon the language of KRS 45A.245(1) and its predecessor that it applies to written employment contracts began in 1978 with *Martin*; *Rothstein* confirmed it in 2017; and a majority of this Court concluded the waiver applied to a written contract between the university and its students in *University of Kentucky v. Regard*, 670 S.W.3d 903 (2024). Indeed, despite three dissenting justices in *Regard*, no one on the Court questioned that had there been a written contract, the waiver of KRS 45A.245(1) was applicable. The dispute on this Court in *Regard* was limited to whether there was in fact a written contract. *Id.* at 923-31.

Still more, "we do not rest the case on this ground, but profess ourselves prepared to maintain that the decision is right." *South's Heirs*, 23 Ky. at 63.

16

"Each local district shall enter into written contracts, either limited or continuing, for the employment of all teachers." KRS 161.730. KRS 45A.245(1) applies to "to each contract solicited or entered into after January 1, 1979." KRS 45A.225(2). Although KRS 45A.225 through KRS 45A.290 generally provides for how a contractor can bring a contract dispute, first within the Finance and Administration Cabinet and then with an appeal to the courts; like Justice Noble in *Furtula*, we find the general/specific canon of statutory construction applicable. "Our rules of statutory construction provide that 'where there is both a specific statute and a general statute seemingly applicable to the same subject ... the specific statute controls.'" *Letcher Cnty. Bd. of Ed. v. Hall*, 671 S.W.3d 374, 382 (Ky. 2023) (quoting *Abel v. Austin*, 411 S.W.3d 728, 738 (Ky. 2013)).

KRS 161.790 is the more specific statute in that it addresses itself exclusively to contract disputes between a teacher and their local board involving charges of insubordination or misconduct within the school setting; immoral or unlawful conduct within and without the school setting; mental or physical disability; or incompetence and neglect of duties. KRS 161.790(1)(a)-(d).[5] It is indisputably both more specific and applicable to the underlying facts. This does not mean the KMPC is void in all instances vis-à-vis local Boards of Education. "To the extent possible, the general provisions should be

---

[5] We have in fact declared that such claims are not common law breach of contract claims but statutory wrongful termination claims. *Edwards*, 434 S.W.3d at 478.

applied." *Furtula,* 438 S.W.3d at 318. KRS 45A.245(1) is a general provision which does not conflict with KRS 161.790. "Clearly, the legislature has waived governmental immunity on *all* claims brought by *all* persons on *all* lawfully authorized written contracts with the Commonwealth." *Rothstein,* 532 S.W.3d at 651.[6]

We, therefore, reaffirm *Rothstein* on the grounds of the general/specific statutory canon of construction. It is clear Boards of Education and their employees, like universities and their employees, are governed by specific statutes regarding contract disputes and the specific will control over the general. Thus, the KMPC only applies to employment contracts when it is a general provision that is not in conflict with a specific provision in some other statute. That is true of KRS 45A.145(1)'s waiver. We are convinced the applicability of KRS 45A.245(1) to all written contracts with the Commonwealth, even employment contracts, is correct and deem the question settled. Should the General Assembly wish to limit this waiver and reclaim some portion of the Commonwealth's immunity, then it must do so through legislative action.

There are other arguments, however, worth addressing. BEP further contends that it is not a part of the Commonwealth under KRS 45A.245(1),

---

[6] This rule also applies to BEP's argument that KRS 45A.245(1)'s requirement that all actions be filed in Franklin Circuit Court is evidence the General Assembly did not intend to cover Boards of Education in the waiver. BEP argues the venue provision, applied to Boards of Education, is unreasonable in that a Board would have to travel to Franklin County to defend itself. Once more, however, KRS 161.790(9) is the more specific statute, and it authorizes the circuit court wherein the Board of Education is also located to hear the appeal.

18

since that term "means the Commonwealth of Kentucky and any of its departments or agencies." KRS 45A.240(1). In support, BEP points to another portion of the KMPC which defines a "local public agency" as

> a city, county, urban-county, consolidated local government, school district, special district, or an agency formed by a combination of such agencies under KRS Chapter 79, or any department, board, commission, authority, office, or other sub-unit of a political subdivision which shall include the offices of the county clerk, county sheriff, county attorney, coroner, and jailer.

KRS 45A.345(11). BEP contends this definition should apply to it over KRS 45A.240(1)'s definition. As previously noted, however, the KMPC frequently gives specific definitions for terms that only have applicability for a specific portion of the statute and can even define the same word two different ways. KRS 45A.345 is one such provision, as its title explicitly indicates "Definitions for KRS 45A.343 to 45A.460[.]" Indeed, the language of the statutory text itself states, "As used in KRS 45A.343 to 45A.460, unless the context indicates otherwise . . . ." These several provisions govern purchasing power and the competitive bidding of contracts: "Any local public agency may adopt the provisions of KRS 45A.345 to 45A.460. No other statutes governing purchasing shall apply to a local public agency upon adoption of these provisions." KRS 45A.343(1).

That is the end of the inquiry. We cannot haphazardly apply definitions for terms meant only for specific sections of the KMPC beyond the specific sections enumerated. To do otherwise would wreak havoc upon the overall structure and coherence of the KMPC. KRS 45A.240(1) gives a definition of Commonwealth applicable to KRS 45A.245(1); KRS 45A.345(11) gives a

19

definition of local public agency that is explicitly *not* applicable to KRS

45A.245(1). The former statute defines the Commonwealth in as broad a

manner as possible, as all departments and agencies of the state, for purposes

of waiver of governmental immunity. The latter statute defines local public

agency specifically because it is part of the general purpose of KRS 45A.343(1)

to allow local public agencies to adopt KRS 45A.343 to KRS 45A.460. There is

no conflict between these provisions.

Yet and still, BEP argues it is not an agency of the Commonwealth for

purposes of waiver for written contracts. It concedes

> [t]here has never been any question about the status of a local
> school board as an agency of state government, but, if there were,
> such is now beyond the realm of argument because of our decision
> in *Rose v. The Council for Better Education, Inc.,* Ky., 190 S.W.2d
> 186 (Rendered, as Modified, September 28, 1989). *Rose* recognizes
> public schools are a responsibility of the state, and local school
> boards exist simply as agencies of state government.

*Clevinger v. Bd. of Ed. of Pike Cnty.,* 789 S.W.2d 5, 10-11 (Ky. 1990). But BEP

insists that under the definition of "governmental body" found in KRS

45A.030(17), it is not "any department, commission, council, board, bureau,

committee, institution, legislative body, agency, government corporation, or

other establishment of the executive or legislative branch of the state

government[.]" It cites to *Bd. of Ed. of Russellville Independent Schools v. Logan

Aluminum, Inc.,* 764 S.W.2d 75, 80 (Ky. 1989) for support.

Set aside the dispositive conclusion that the words "governmental body"

do not appear in KRS 45A.245(1), therefore, that term has no bearing on the

scope of its waiver; what exactly does BEP believe it is? There are only three

20

branches of government in this Commonwealth—executive, legislative, and judicial. Ky. Const. § 27. Boards of Education are manifestly not a part of the judiciary nor the General Assembly, so they must be a part of the executive. But *Logan Aluminum* states, "[t]he composition of the Department of Education is set out in KRS 156.010 and does not include local public common school boards or districts." 764 S.W.2d at 80. Therefore, according to BEP, it is not a part of the executive either! BEP appears to believe Boards of Education are *sui generis* and constitute a heretofore unrecognized fourth branch of government so far as waiver of immunity is concerned.

KRS 156.010 merely describes the authority of the Commissioner of Education to organize the Department of Education; and it is a part of the Department of Education's duty to monitor "the management of school districts, including administration and finance, implementation of state laws and regulations, and student performance[.]" KRS 156.010(1)(f). "The Kentucky Board of Education shall have the management and control of the common schools and all programs operated in these schools[.]" KRS 156.070(1). Moreover, "[t]he administration of the duties of the Education Professional Standards Board, established in KRS 161.028, shall be headed by the commissioner of education[.]" KRS 161.017(1). The Education Professional Standards Board (EPSB) includes 17 *ex officio* members and 15 members appointed by the Governor. KRS 161.028(2)(a). "No person shall be eligible to hold the position of superintendent, principal, teacher, supervisor, director of pupil personnel, or other public school position . . . unless he or she holds a

21

certificate of legal qualifications for the position, issued by the Education Professional Standards Board." KRS 161.020(1). The immense authority of the EPSB is amply demonstrated and delineated by reference to KRS 161.028(1)(a)-(t). We are thus certain local Boards of Education are members of the executive branch and are within the definition of "governmental body" were that phrase relevant to KRS 45A.245(1)'s waiver.

BEP next argues that *Clevinger* and *Ammerman v Bd. of Ed. of Nicholas Cnty.,* 30 S.W.3d 793 (Ky. 2000) both hold that Boards of Education are protected by sovereign/governmental immunity.[7] *Clevinger* was a class-action suit brought by current and former employees alleging a 42 U.S.C. § 1983 claim. 789 S.W.2d at 12. The opinion does not mention KRS 45A.245(1). *Clevinger* was limited to whether 42 U.S.C. § 1983 precluded a sovereign immunity defense and was resolved on the basis of the Supreme Court of the United States' precedent. *Id.* at 11 (citing *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). The case is therefore distinguishable and of little bearing on the immunity defense advanced by BEP. Still more, we have overruled *Clevinger* on this very point, and so has the Supreme Court of the United States. *Cook v. Popplewell,* 394 S.W.3d 323, 327 n.3 (Ky. 2011) (citing *Howlett v. Rose,* 496 U.S. 356, 375-81 (1990)). *Clevinger* is not good law for its holding regarding immunity and § 1983 claims. Since it

---

[7] *Clevinger* and *Ammerman* spoke in terms of sovereign immunity, but we subsequently clarified "[a] local board of education is not a 'government,' but an agency of state government. As such, it is entitled to governmental immunity, but not sovereign immunity." *Yanero v. Davis,* 65 S.W.3d 510, 527 (Ky. 2001).

does not mention KRS 45A.245(1), it simply has nothing else to say about immunity.

*Ammerman* concerned a group of current and former teachers who brought multiple claims of contract, tort, and civil rights violations against the Board of Education of Nicholas County. 30 S.W.3d at 796. The contract claims, specifically, were dubiously contractual in nature—"although the claims were couched in terms of breach of contract . . . the claims in fact involved sexual harassment[.]" *Id.* The Appellants argued that pursuant to their employment contracts, the Board had

> a duty to protect them from the mistreatment to which they were subjected. While acknowledging that sovereign immunity is applicable to contract claims as well as to tort claims, Appellants argue, in effect, that a contract right to be free from sexual harassment exists by virtue of statutory mandate and that it must be accompanied by a remedy for its breach.

*Id.* Specifically, the alleged statutory mandate was predicated upon KRS 161.190 and KRS 161.164. *Id. Ammerman* is not a KRS 161.790 case. And once again, this decision does not cite KRS 45A.245(1). *Ammerman* ultimately concluded immunity applied to bar the claims either as a matter of contract or tort. *Id.*

Given the ambiguous nature of the claims presented in *Ammerman*; that it was not a suit pursuant to KRS 161.790; and its failure to cite KRS 45A.245(1), we conclude that decision is not controlling here. We are, for obvious reasons, reluctant to embrace a position that this Court speaks authoritatively through silence. "Even though . . . [KRS 45A.245(1)] was on the

23

books at that time, the Court simply failed to consider it." *Benningfield ex rel. Benningfield v. Zinsmeister*, 367 S.W.3d 561, 565 (Ky. 2012). Although *Ammerman* could have implicitly interpreted KRS 45A.245(1), "it seems more likely that the Court simply missed the statute." *Id.*

BEP, however, argues *Ammerman*'s citation to *Martin* demonstrates it did implicitly rule upon KRS 45A.245(1). *Ammerman*, 30 S.W.3d at 797. Given that *Ammerman* and *Martin* reached contrary conclusions (if *Ammerman* is understood as speaking authoritatively on KRS 45A.245(1)), we would expect some kind of statement to the effect that *Martin* was overruled or abrogated but there is no such statement. We might otherwise expect a modicum of analysis demonstrating *Martin*'s flaws but once again there is no such discussion in *Ammerman*. BEP does not cite to any subsequent decision that has noted the alleged incongruity between *Ammerman* and *Martin*. Once more, we do not favor this argument by silence. We are satisfied that if the *Ammerman* court intended to overrule *Martin* it would have at the very least stated so explicitly.

Finally, BEP presents the parade of horribles argument, prophesying that Boards of Education in the Commonwealth will now be exposed "to suits for damages in all manner of contract matters from school facility construction, to equipment leases, to procurement of supplies, to independent contracts for services from vendors, and all sorts of contracts in between." Alas, that is exactly what the General Assembly intended. KRS 45A.235 expressly authorizes the Finance and Administration Cabinet to adjudicate "a claim or controversy arising under contracts between the Commonwealth and its

24

contractors." "The decision shall be final and conclusive unless fraudulent, or unless the contractor sues pursuant to KRS 45A.245." *Id.* KRS 45A.245 through KRS 45A.275 clearly evince not merely the General Assembly's awareness but its intent that such claims could go to court and possibly be adjudicated adversely against the Commonwealth. This parade of horribles argument is, essentially, a tautology—we should conclude BEP is not included in the waiver of governmental immunity otherwise its immunity is waived. We are unpersuaded by such unreason.

### III.   Conclusion

We affirm the Court of Appeals' decision only insofar as it held KRS 45A.245(1)'s waiver of governmental immunity applies to BEP. We reaffirm *Rothstein* and its conclusion that "the legislature has waived governmental immunity on *all* claims brought by *all* persons on *all* lawfully authorized written contracts with the Commonwealth." *Rothstein,* 532 S.W.3d at 651. Because BEP is not entitled to governmental immunity, we remand this case to Franklin Circuit Court, to which it had been transferred from Bourbon Circuit Court. Given our conclusion in Footnote 6, the issue of transferring venue back to Bourbon Circuit Court can be raised again. But, in any event, BEP's exhaustion of administrative remedies argument, and any arguments of Earlywine's that an exception to that requirement applies, ought to be addressed as soon as possible. We do not instruct the lower court one way or another how to decide that question, and nothing in this opinion should be taken to suggest otherwise.

25

All sitting. Goodwine, Nickell, and Thompson, JJ., concur. Bisig, J., concurs in part and dissents in part by separate opinion in which Lambert, C.J. and Keller, J., join.

BISIG, J., CONCURRING IN PART AND DISSENTING IN PART: I agree with much of the well-written Majority Opinion, including its conclusion that KRS 45A.245(1) waives the Board's sovereign immunity against Earlywine's contract claims.[8]  However, I must respectfully dissent from the Court's conclusion that this matter must be remanded to the trial court for further proceedings.  Our case law commands that in the course of interlocutory appeals, this Court *should* at a minimum consider whether the trial court had subject matter jurisdiction to adjudicate the issue raised in the interlocutory appeal.  Here, there is no dispute that Earlywine failed to exhaust his administrative remedies.  Thus, the trial court lacked subject matter jurisdiction to rule upon the case, whether as to sovereign immunity or otherwise. I therefore would affirm the Court of Appeals in full and remand for dismissal of those claims.

As the Majority notes, a party's failure to exhaust administrative remedies deprives the courts of subject matter jurisdiction to consider the underlying dispute. Majority Opinion at 6.  This Court has also repeatedly stated that a court not only may, but indeed *must*, consider whether it has subject matter jurisdiction to consider the matter before it. *Childers v. Albright,*

---

[8] Though I agree with the Court's conclusion regarding sovereign immunity, I would hold that we cannot even reach that issue given our lack of subject matter jurisdiction over this case.

636 S.W.3d 523, 526 (Ky. 2021) ("A 'court must determine for itself whether it has jurisdiction.'") (quoting *Hubbard v. Hubbard*, 303 Ky. 411, 197 S.W.2d 923, 923 (1946)). This command applies not only to trial courts, but also to this and other appellate courts. *Id.* This Court has also held that appellate courts *should* consider subject matter jurisdiction not only in the course of a final appeal, but also in an interlocutory appeal when the issue goes to the trial court's subject matter jurisdiction to make the ruling at issue in the interlocutory appeal. Indeed, *Hensley*—which the Majority misreads—is one such case.

In *Hensley*, this Court considered an interlocutory appeal of a trial court's class action certification ruling. *Hensley*, 549 S.W.3d at 436. As a preliminary matter, however, the Court was faced with an allegation that the trial court lacked subject matter jurisdiction over the case because the claims at issue did not satisfy the minimum amount in controversy requirement. *Id.* at 437. The Court thus had to resolve the issue of whether it could adjudicate the subject matter jurisdiction issue in the course of the interlocutory appeal. *Id.* at 438-39. The Court noted that this issue actually presented two separate and distinct questions: 1) did at least *one* of the claims satisfy the minimum amount in controversy requirement such that the trial court had jurisdiction to rule on the issue on interlocutory appeal—class certification—*at all*; and 2) did *other* of the claims also meet the minimum amount requirement such that the trial court *also* had subject matter jurisdiction over *those* claims? *Id.* at 438.

As the Majority correctly observes, the Court held the second question to beyond the permissible scope of the interlocutory appeal. *Id.* at 439. Notably, however, the Majority omits the Court's *other* holding, namely that it *could* consider whether at least *one* claim satisfied the minimum amount requirement, because without that fact, the trial court would have had no subject matter jurisdiction empowering it to act in the case *at all*:

> The question that is appropriate for us to answer on interlocutory appeal is: Did the trial court have the requisite subject-matter jurisdiction to certify the class? . . . . [This] question essentially asks if the trial court had the power to do what it did—in this case, to certify a class action. Challenging a class-action certification determination is a proper issue for interlocutory appeal, **so challenging a trial court's initial subject-matter jurisdiction over a claim to make such a determination is also a proper issue for interlocutory appeal.**

*Id.* at 438-39 (emphasis added). Whether such subject matter jurisdiction existed turned on whether at least one of the claims of the plaintiffs satisfied the minimum amount in controversy requirement. *Id.* at 439 ("[O]ne plaintiff in this case satisfies the jurisdictional amount-in-controversy for the trial court to exercise subject-matter jurisdiction over that plaintiff's claim. Once a trial court has the requisite subject matter jurisdiction over a claim—and all it takes is one claim—the circuit court may proceed to decide upon certification of a class."). The Court therefore considered whether there was subject-matter jurisdiction over at least one of the claims, ultimately concluding that "the trial court does have subject-matter jurisdiction over at least one of the claims by one of the plaintiffs . . . because the plaintiff's asserted amount-in-controversy satisfied the jurisdictional minimum for circuit court jurisdiction." *Id.*

28

Thus, contrary to the Majority's suggestion, *Hensley* plainly holds that in an interlocutory appeal, the Court *should*, at a minimum, consider whether the trial court had subject matter jurisdiction to adjudicate the issue raised in the interlocutory appeal.[9] In that case, which involved multiple claimants, that involved determining whether at least *one* of them met the minimum amount in controversy requirement. **In the present case—where, in contrast to *Hensley*, there are not multiple claimants but rather only one claimant— the trial court simply *could not* have adjudicated the sovereign immunity issue *at all* if it lacked subject matter jurisdiction over the case brought by that single claimant, Earlywine. And of course, it lacked such subject matter jurisdiction if Earlywine failed to exhaust his administrative remedies.** Majority Opinion at 6. Moreover—and regardless of these precedents—the fundamental principle remains in any event that a court without jurisdiction is wholly powerless to act *in any way* over the parties or dispute before it, and therefore must dismiss the matter where subject matter jurisdiction is lacking. *See Commonwealth Health Corp. v. Croslin*, 920 S.W.2d 46, 48 (Ky. 1996) ("It is understood that if a court does not have subject matter

---

[9] Similarly, we have held that this Court may, in the course of an interlocutory appeal, consider constitutional standing, which—like subject matter jurisdiction—is non-waivable and goes to the very authority of the courts to hear the case. *Cabinet for Health & Fam. Servs. v. Sexton*, 566 S.W.3d 185, 191-92 (Ky. 2018) (reaching issue of standing in context of sovereign immunity interlocutory appeal because standing argument asserts "Kentucky courts cannot hear this case because no *justiciable cause*—a *constitutional predicate to maintaining a case in Kentucky courts*—exists" and "standing is not waivable."); *see also Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 664 S.W.3d 633, 647 (Ky. 2023) (addressing constitutional standing in course of considering interlocutory appeal of temporary injunctive relief).

29

jurisdiction, *the court has no 'power to do anything at all.'"*) (quoting *Duncan v. O'Nan*, 451 S.W.2d 626, 631 (Ky. 1970)) (emphasis added). Thus, because Earlywine's failure to exhaust his administrative remedies deprived the trial court of subject matter jurisdiction to rule on anything at all, including the sovereign immunity issue, I conclude the Court errs in failing to consider that issue here.

I further conclude that Earlywine's failure to exhaust administrative remedies requires dismissal of his claims. Earlywine does not dispute that he did not pursue his administrative remedies, but rather contends his failure to do so is justified because the Superintendent failed to notify the Board of his suspension without pay, and because the Superintendent's letter did not set forth a detailed basis for the suspension. Neither error warranted Earlywine's failure to pursue his administrative remedies. KRS 161.790(3) requires a teacher suspended without pay to, within 10 days of receiving notice, "notify the commissioner of education and the superintendent of his or her intention to answer the charge." Both of the alleged deficiencies in the Superintendent's letter to Earlywine could have been raised in such a notice. Moreover, Earlywine faced an allegation of sexually abusing a student, and thus the basis for the suspension was well-known to him, and he points to no actual prejudice he faced as a result of the letter's failure to include the "detailed basis" for his suspension. Earlywine also identifies no prejudice to his ability to pursue his administrative remedies flowing from the Superintendent's failure to notify the Board of his suspension without pay.

30

The Majority contends Earlywine should be allowed to argue to the trial court on remand that perhaps the errors in the Superintendent's letter *could* excuse his failure to exhaust his administrative remedies. Majority Opinion at 9. Notably, however, KRS 161.790(3) explicitly provides that "[u]pon failure of the teacher to give notice [of intent to dispute charges] within ten (10) days," the action against him "shall be final."[10] Thus, while the Majority muses about whether this Court might "adopt [a] rule" excusing exhaustion of administrative remedies on lack of proper notice grounds, we are statutorily precluded from any such holding. The General Assembly has stated in plain terms that after a teacher receives notice of his suspension, his failure to pursue the administrative remedies provided in KRS 161.790 renders the action against him "final." We are not at liberty to alter the rules of the administrative remedies set forth by the legislative branch.

In sum, Earlywine's failure to give the requisite notice commencing an administrative appeal was unjustified, and by statute his failure to do so is preclusive of his claims here. As such, Earlywine's claims against the Board regarding his suspension without pay are precluded by his failure to exhaust his administrative remedies, and I therefore would find that the Court of

---

[10] Though the statute is phrased in terms of a "dismissal" being final, KRS 161.790 makes plain the administrative remedies apply with equal force to suspensions without pay. KRS 161.790(10) ("The procedures set out in subsection (3) of this section shall apply if the teacher is suspended without pay . . . .").

31

Appeals did not err in remanding the case to the trial court for dismissal of those claims.

Lambert, C.J., and Keller, J., join.


COUNSEL FOR APPELLANT/CROSS-APPELLEE:

Jonathan C. Shaw
Grant R. Chenoweth
Porter, Banks, Baldwin & Shaw, PLLC


COUNSEL FOR APPELLEE/CROSS-APPELLANT:

Tyler Z. Korus
Robert L. Roark
Roark & Korus, PLLC