RENDERED: JUNE 27, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0191-MR

LITTLE BENT FARM, LLC                                    APPELLANT


                 APPEAL FROM SIMPSON CIRCUIT COURT
v.                 HONORABLE KENNETH H. GOFF, II, JUDGE
                 ACTION NO. 21-CI-00069


WESTERN KENTUCKY
UNIVERSITY; CITY OF BOWLING
GREEN, KENTUCKY; DR. PAUL
WOOSLEY; AND JOSEPH
REYNOLDS                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, LAMBERT, AND McNEILL, JUDGES.

LAMBERT, JUDGE: Little Bent Farm, LLC (hereinafter "LBF") appeals from the January 9, 2024, order summarily dismissing its claims of breach of an implied warranty and negligent failure to comply with the labeling of a pesticide for the sale of allegedly contaminated compost. After careful review of briefs, record, and law, we affirm the dismissal of LBF's suit.

# BACKGROUND FACTS AND PROCEDURAL HISTORY

This appeal involves the composting activities conducted on Western Kentucky University's Farm[1] (hereinafter "the Farm"), an 800-acre property located in Bowling Green, Kentucky. The Farm began its composting operation in approximately 1987 as part of an agreement with the City of Bowling Green (hereinafter "the City") to accept and lawfully dispose of the leaves that the City collected from within city limits as a free service.

Under the terms of the initial agreement, the City agreed to reimburse Western Kentucky University (WKU) for its costs, up to $27,871.10. WKU, in turn, agreed to provide the labor, tools, and sundry items needed to run the compost yard. Half of the compost produced by WKU was to be considered the City's property and the compost not used by the City, along with WKU's share, was to be marketed and sold by WKU, with the City entitled to any proceeds received on its share.

Via yearly municipal orders, the City has continued in this arrangement with WKU, with minimal modifications. These modifications included that, beginning in 2015, the City's financial contribution increased to the

---

[1] References to the Farm are interchangeable with Western Kentucky University, unless the context of the sentence requires otherwise.

current sum of $45,900.00, and at some point the City began receiving a set 25% of the compost sale's proceeds.

WKU uses the funds from the City as the operating account for the compost yard, with any shortfalls being advanced by the Farm's budget and repaid, when possible, by WKU's portions of the proceeds from compost sales. In addition to the City's 25% of the proceeds, a portion of the sales is paid to WKU Facilities Management. This portion is used to defray its cost for transporting food scraps, which have been used in the compost since 2017, from WKU's dining halls to the Farm. Surplus funds, if any, are then put towards student scholarships.[2] Over the years, the composting yard has grown, and it received two government grants to increase its production. In fiscal year 2020, compost sales generated approximately $14,623.00 in revenue.

Dr. Paul Woosley and Joseph Reynolds are employees of WKU. Dr. Woosley is the Director of the Farm. Joseph Reynolds, a licensed compost operator who reports directly to Dr. Woosley, is solely responsible for the compost yard management. Reynolds creates the compost from the leaves provided by the City, food scraps collected from WKU's dining halls, and animal bedding, sawdust, and manure collected from the Farm and the expo center. He uses his

---

[2] LBF notes without any specificity, explanation, or supporting citations that it disputes "WKU's contention that 75% of the revenue from compost sales goes to student scholarship[s.]"

judgment and experience to determine what to add to the compost pile, when to turn the pile, and when the composting process is completed. In addition to these duties, Reynolds also handles the marketing and selling of the compost produced by the Farm.

In April 2019, Dr. Woosley applied GrazonNext, a pesticide[3] containing aminopyralid, on 51 acres of fields at the Farm. Dr. Woosley did not inform Reynolds of this action, and Reynolds denies any independent knowledge.

On March 26, 2020, LBF purchased two dump truck loads of compost from the Farm. LBF is a five-acre farming business operating in Simpson County, Kentucky, that grows vegetables and sells its produce at farmers' markets. Reynolds, who handled the sale and delivery, was familiar with LBF and its intended use for the compost. After LBF applied the compost to its vegetable fields, the crops exhibited damage consistent with contamination from aminopyralid, which LBF does not use. Suspecting that the compost was the source of the contamination, LBF had a sample tested, and the results were positive for aminopyralid.

Thereafter, LBF contacted the Kentucky Department of Agriculture (hereinafter "the KDA"), to determine whether it could sell its produce despite the suspected pesticide contamination, and the KDA opened an investigation into the

---

[3] Specifically, the product is an herbicide, which is a subset of pesticides.

Farm's use of pesticides to verify compliance with state and federal laws. The KDA and Reynolds, who had received other complaints about possible pesticide contamination, collected samples from the compost purchased by LBF and from WKU's remanent pile, the bulk of the product having been sold, and submitted them for testing at different labs. Additionally, the KDA also collected and submitted foliage samples from LBF's affected plants.

The parties dispute the significance of the different testing methods, the laboratories used, what samples were actually tested, and the results, but the tests conducted by the KDA and WKU were negative for aminopyralid. And, relatedly, WKU's bioassays, testing seed germination when grown with the compost versus a control soil, did not suggest pesticide contamination. Based on its test results, the KDA concluded that the compost was not contaminated and closed its investigation. Despite this, LBF was instructed by a different KDA employee that its produce could not be sold, and so LBF destroyed its 2020 crop.

On March 17, 2021, LBF filed the underlying suit alleging the following causes of action against WKU, Reynolds and Dr. Woosley, in their individual capacities, and the City: (1) breach of implied warranty of fitness, regarding the unsuitability of the compost for its intended purpose of growing

vegetables and (2) negligent failure to comply with pesticide labeling.[4] LBF sought lost profits, consequential damages, lost future sales and reputational damages, costs to restore the contaminated property to its former state, and punitive damages. The respondents denied liability, and the parties engaged in extensive discovery.

On October 31, 2022, WKU and its employees filed a motion for summary judgment. In the motion, WKU and its employees argued that they had total immunity, governmental and qualified official immunity, respectively, from LBF's suit. They additionally asserted that summary judgment was proper because all of LBF's claims were precluded by the KDA's finding of no contamination and by the economic loss rule.[5] As for the claims against Reynolds and Dr. Woosley individually, the parties asserted that the Uniform Commercial Code (UCC)[6] and the Kentucky Product Liability Act (KPLA)[7] barred LBF's action because neither Reynolds nor Dr. Woosley qualified as sellers or manufacturers. Rather they were

---

[4] LBF also sued for negligent failure to warn of possible pesticide contamination and the substantial danger to broadleaf vegetable plants and fraud by omission for failure to disclose the actual or possible pesticide contamination. However, the court dismissed these claims, concluding they had been waived or abandoned, and LBF has not challenged this determination.

[5] "The 'economic loss rule' prevents the commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, recognizing that such damages must be recovered, if at all, pursuant to contract law." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011).

[6] Kentucky Revised Statute (KRS) 355.2-314.

[7] KRS 411.320(1).

merely agents of the seller/manufacturer, WKU. Finally, WKU and its employees argued summary judgment was proper because LBF had failed to establish its entitlement to damages or that WKU and its employees had breached a duty of care.

On December 7, 2022, the City filed its own motion for summary judgment. Arguing that LBF's claims arose from the City's exercise of its good faith legislative or quasi-legislative discretion to adopt the municipal order approving dumping leaves at WKU and its exercise of discretion to allocate its resources, the City asserted immunity pursuant to the Kentucky Claims Against Local Government Act (CALGA), codified at KRS 65.200 *et seq.*

The City additionally asserted that it had been exonerated of direct liability because LBF neither complained of the City's conduct nor did it allege that the leaves supplied by the City were the source of the contamination. As for vicarious liability, the City disputed that it had engaged in a joint venture or enterprise, noting that it has no formal partnership agreement with WKU, that the two entities do not share a common purpose or pecuniary interest, and that the City exercises no control over the compost yard operation. The City asserted that its only role was to dump its leaves at the Farm for a fee, defrayed to a limited extent by future sales. Finally, the City echoed WKU's arguments that the KDA

investigation foreclosed LBF's suit and that LBF had failed to prove a redressable injury.

LBF filed its memorandum in opposition to summary judgment on January 31, 2023. Therein, LBF argued against immunity for any of the respondents, disputed that either the KDA investigation or the economic loss rule precluded its claims, and maintained that the evidence was sufficient to survive summary judgment and to establish a redressable injury.

After reply briefing, the circuit court held a hearing on March 9, 2023, wherein the parties reiterated their arguments on the respondents' claims of immunity. The court then entered an order on January 9, 2024, concluding that the respondents were immune and granting summary judgment in their favor. The court also concluded that summary judgment was alternatively proper as to all respondents because the KDA findings and the economic loss rule foreclosed LBF's claims and because LBF had failed to produce evidence of the respondents' liability or of recoverable damages. Finally, the court determined that the individual claims against Dr. Woosley and Reynolds were contrary to both the UCC and the KPLA and, accordingly, dismissed all counts against them. This appeal timely followed.[8]

---

[8] LBF also appeals the court's October 29, 2021, order granting WKU's motion to suppress an alleged pre-litigation admission made by Reynolds that the compost had been inadvertently

## STANDARD OF REVIEW

Kentucky Rules of Civil Procedure (CR) 56.01 provides that a claimant "may, at any time, . . . move with or without supporting affidavits for a summary judgment . . ." in his or her favor. And CR 56.03 instructs that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The Court in *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010), set out the standard of review.

> The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.

*Id.* With this standard in mind, we turn to LBF's claims.

---

contaminated with pesticides. However, as we do not reach the issue of liability, we likewise do not need to further address this claim.

**ANALYSIS**

First, LBF challenges the court's determination that WKU had governmental immunity from its suit.

An agency of state government has governmental immunity from civil damage actions arising from its performance of integral governmental acts. *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001). "The immunity does not extend, however, to agency acts which serve merely proprietary ends, *i.e.*, non-integral undertakings of a sort [that] private persons or businesses might engage in for profit[,]" especially if the intent is to raise revenue or to participate in a commercial market. *Breathitt County Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009). "[E]ducation is an integral aspect of state government and . . . activities in direct furtherance of education will be deemed governmental rather than proprietary." *Id*. "The issue of whether a defendant is entitled to the defense of sovereign or governmental immunity is a question of law" reviewed de novo. *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 647 (Ky. 2017).

Citing testimony that the proceeds from the compost sales are used to defray WKU's costs and to fund scholarships, that WKU, in its discretion, gives compost to non-profits and to local farmers for free, and that classes in soil microbiology, environment, and horticulture use the compost yard to teach students about the composting process, the circuit court concluded that the

-10-

compost yard's operations were educational, and thus, WKU was immune from LBF's suit. The court deemed it immaterial that WKU sold the compost to the public, asserting that Kentucky law provides that revenue generating activities performed by educational institutions are governmental when the revenue is used to further education.

On appeal, LBF contends that the circuit court impermissibly disregarded the evidence most favorable to LBF, specifically, that WKU does not offer any courses in composting, that Reynolds is not qualified to teach the science involved in composting, that WKU has not historically recognized the composting unit for educational purposes in promotional materials, and that the primary purposes of the program is to save WKU and the City money and to compete with private entities in a commercial market and not, as the court seemed to conclude, to raise funds for student scholarships. LBF further asserts that, because WKU receives a tangible benefit from its composting activities, pursuant to *Brabson v. Floyd County Board of Education*, 862 F. Supp. 2d 571, 576 (E.D. Ky. 2012), the activities are proprietary and are not subject to immunity. Consequently, LBF maintains that the order dismissing its suit must be reversed.

Urging this Court to affirm, WKU states that, like in *Autry v. Western Kentucky University*, 219 S.W.3d 713, 717-18 (Ky. 2007), the challenged conduct, operating a farm in this case versus operating a dormitory in *Autry*, was prescribed

-11-

by KRS 164.300 and, therefore, governmental in nature and subject to immunity. As for the import of WKU selling the compost to the public at large, WKU asserts that the court's conclusion that this did not render its activities proprietary is supported by *Schwindel v. Meade County*, 113 S.W.3d 159 (Ky. 2003); *Brabson*, *supra*; and *Saunier v. Lexington Center Corporation*, No. 2018-CA-1290-MR, 2020 WL 1898406 (Ky. App. Apr. 17, 2020) (unpublished). Finally, WKU argues that LBF is, essentially, contesting WKU's immunity on the basis of its belief that the composting program poorly serves WKU's educational mission, but, as the Supreme Court of Kentucky recognized in *Prater*, passing judgment on policy decisions of coordinate branches of government is not the function of the court. *Prater*, 292 S.W.3d at 887. Instead, the court is solely tasked with determining whether the challenged activities further education. *Id.* And because there is no dispute that the composting activities, in conjunction with WKU's larger program of agricultural education, provide learning opportunities and raise scholarship funds for students, WKU maintains that the court correctly deemed the activity educational.

In its reply brief, LBF stresses that the focus must be on whether the compost yard standing alone, not WKU's farming operations as a whole, addresses a state-level governmental concern. For its position, LBF relies on *Kentucky River Foothills Development Council, Inc. v. Phirman*, 504 S.W.3d 11 (Ky. 2016)

-12-

(arguing that the court in that case differentiated between Kentucky River's substance abuse program, the activity at issue in the suit, from its other services as a community action agency) and on *Northern Kentucky Water District v. Carucci*, 600 S.W.3d 240 (Ky. App. 2019) (asserting that the Court's denial of the Water District's immunity claim was limited to its actions involving the installation of a water meter to measure a consumer's personal consumption for billing purposes, not its overall services). LBF states that the compost yard, in and of itself, is neither a necessary nor essential part of carrying out WKU's state-level governmental function. And it argues that WKU's composting activity is materially different from providing dormitories for students, like in *Autry*, or the operation of a hospital in conjunction with a medical school, addressed in *Withers v. University of Kentucky*, 939 S.W.2d 340, 343 (Ky. 1997).

Regarding whether the fact that WKU does not profit from the proceeds of its compost sales precludes that activity from being proprietary in nature, LBF argues that the authority relied on by WKU is distinguishable because in both *Schwindel* and *Saunier* the sole purpose of the challenged activity was fundraising for a recognized governmental function, whereas here the primary purpose is to defray WKU's solid waste disposal fees.

We are unpersuaded by LBF's arguments. As an initial matter, we reject that we must confine our consideration to the compost yard activities alone for two reasons.

First, the authority on which LBF relies is distinguishable. In *Phirman*, the plaintiff's claims pertained solely to the substance abuse recovery services of Liberty Place, a separate entity that was merely administered by Kentucky River, a community action center, and which did not perform Kentucky River's debatably governmental function of alleviating poverty. 504 S.W.3d at 14. Herein, there is no assertion or evidence that the compost yard is a formally separate entity from the Farm. Indeed, the compost yard is listed as one of the Farm's facilities in the brochure LBF refers to this Court. As for *Carucci*, LBF is correct that, despite opining that the services provided by the water district were not governmental in nature, the Supreme Court of Kentucky further analyzed and decided the issue based on the specific conduct at issue, the installation of a water meter for purposes of billing a private consumer. Arguably, this more specific analysis was not required; however, this brings us to our second basis for rejecting LBF's claim, the scope of the activities at issue in the suit.

Unlike *Carucci*, which involved an isolated act of installing an individual meter, the activities relevant to LBF's suit encompass the management of the Farm in general. For example, in its brief LBF asserts that its expert

-14-

identified the following potential sources of pesticide contamination: water contamination of surface drainage, lateral movement of the pesticide into unsprayed areas, repeated applications of the pesticide within 12 months without reporting which fields were sprayed, lack of proper record keeping for crop rotation to avoid contamination in the hay potentially used for composting, and contamination resulting from failing to clean the sprayer after applying pesticides. These all relate to the acts or omissions of the Farm as a whole and not the discrete acts of the compost yard.

KRS 164.300 provides that "the purpose of state universities and colleges is to give instruction at the college level . . . in academic, vocational[,] and professional subjects[,] to conduct field service and research, and to render such supplemental services as conducting . . . farms." Accordingly, we agree with WKU that, pursuant to *Autry*, its operation of the Farm, including the compost yard, in accordance with the dictates of KRS 164.300 entitles it to governmental immunity in this suit. As such, the only remaining issue is whether WKU forfeited that immunity through its contract with the City and its sales of compost to the general public.

The undisputed evidence is that WKU uses the money received from the city as the operating budget for the compost yard's activities and any proceeds not returned to the City or passed to WKU Facilities Management to defray costs

are then used to fund student scholarships. Even assuming LBF is correct that the primary purpose of the compost yard is to defray WKU's and the City's waste disposal expenses, we remain unconvinced that this converts its activities to proprietary. Indeed, contrary to LBF's claim, the Supreme Court of Kentucky has recognized that defraying costs and fundraising for other school activities are permissible activities that do not forfeit a school's immunity. *Schwindel*, 113 S.W.3d at 168-69. Accordingly, we affirm the court's conclusion that WKU was immune from the underlying suit.

Next, LBF challenges the court's determination that Reynolds and Dr. Woosley have qualified official immunity from the underlying suit. Although the parties devote significant portions of their briefs to this issue, we conclude that the question is moot. As detailed in the fact section of this Opinion, the court made independent, alternative rulings supporting dismissal, one of which was that Reynolds and Dr. Woosley could not be held liable as individuals because they did not qualify as sellers or manufacturers under the UCC and the KPLA, and LBF has not challenged this ruling in this appeal.[9] Because the claims against Reynolds and Dr. Woosley have been dismissed, we need not address whether they were otherwise immune.

---

[9] We also note that LBF never addressed this issue before the circuit court, despite the fact WKU raised it in its motion for summary judgment.

-16-

LBF next argues that the court erred in finding that the City was immune pursuant to CALGA.[10] KRS 65.2003 provides that:

a local government shall not be liable for injuries or losses resulting from:

. . .

(3) Any claim arising from the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority or others, exercise of judgment or discretion vested in the local government, which shall include by example, but not be limited to:

(a) The adoption or failure to adopt any ordinance, resolution, order, regulation, or rule;

. . .

(d) The exercise of discretion when in the face of competing demands, the local government determines whether and how to utilize or apply existing resources[.]

Nothing contained in this subsection shall be construed to exempt a local government from liability for negligence arising out of acts or omissions of its employees in carrying out their ministerial duties.

The City argued, and the court agreed, that the gravamen of LBF's suit was the City's legislative decision, memorialized by an annual municipal order, to dump leaves at the Farm, and thus, it was immune under CALGA. On

_____

[10] CALGA applies to all tort actions against a local government of the Commonwealth for property damages proximately caused by, relevantly, any defect in public property. KRS 65.2001(1)(a). The parties do not dispute that CALGA applies.

-17-

appeal, LBF asserts that the court mischaracterized its claims as it does not contest the City's decision or its allocation of its resources. Rather, LBF asserts that the City is liable by virtue of its partnership with WKU for the defective product that it jointly owned with WKU, and the court erred in granting the City immunity.

It is uncontested that the City's involvement with WKU's composting operation is the result of its legislative decision-making authority and its discretion in allocating its resources. However, we cannot agree with the circuit court that LBF's claims, that the compost it purchased was contaminated through the respondents' non-compliance with pesticide labeling instructions and that this was a breach of an implied warranty, arise from the City's decisions but rather from its alleged vicarious negligence in executing those decisions. Accordingly, we disagree that the City is immune from the suit.

We must therefore address whether the court correctly determined that LBF could not establish the City's liability. LBF claims that the City was in a partnership with WKU and, thereby, vicariously liable for the defective compost or for Dr. Woosley and Reynolds's alleged negligence. *See* KRS 362.210-362.220. The parties agree that the Kentucky Uniform Partnership Act (KUPA), KRS 362.150 *et seq.*, controls this determination. A partnership is defined as "an association of two (2) or more persons to carry on as co-owners a business for profit[.]" KRS 362.175. KRS 362.180 further instructs that:

-18-

[when] determining whether a partnership exists, these rules shall apply:

(1) Except as provided by KRS 362.225 persons who are not partners as to each other are not partners as to third persons.

(2) . . . joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.

(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business[.]

On appeal, LBF asserts that the court failed to consider the evidence that, per the annual municipal order, WKU and the City jointly own the compost, that the entities share in the "revenue" generated from its sale, and that the compost operation provides both entities the cost-saving benefit of avoiding landfill dumping fees. Additionally, LBF states that both entities have publicized their respective joint contributions to the composting operations, though it only cites to a statement made by WKU in a grant application.

The City, in response, argues that the court properly rejected LBF's claim because both it and WKU are non-profit entities, there is no intent to generate profits (indeed the City loses approximately $42,000.00 annually), and the

-19-

City is not a co-owner in the business, as it is uncontested that it has no role or say in the composting process, it owns none of the equipment or land, and it does not provide any of the labor. The City maintains that its sole aim is to dispose of the leaves collected each year as a free public service to its citizenry in a lawful and financially prudent manner.

Caselaw applying the applicable sections of the KUPA is sparse. In *Roethke v. Sanger*, 68 S.W.3d 352 (Ky. 2001), the Supreme Court of Kentucky held that no partnership existed between a father and son, even though they both operated a crane service business from the same address, used the same phone number and business name, and accepted consolidated payments from customers. The Court based this holding on the facts that the Father and son did not share profits, they were not co-owners of any property, and each kept the money he separately earned (the father remitting to the son his portion of any consolidated payments). In *Smith v. Kelley*, 465 S.W.2d 39 (Ky. 1971), our predecessor Court held that, despite publicly holding out the employee as a partner of the accounting firm, no partnership existed where there was no agreement to share in profits or losses and the employee had no role in the management of the firm.

The commentary to Uniform Partnership Act provides additional guidance. Relevantly, Comment Subsection (a) states that:

> [c]onsistent with the common law and UPA (1914), under this act "co-ownership" is a key concept.

> Ownership involves the power of ultimate control (albeit a power that can be substantially diminished by agreement) and a right to share in the profits of the co-owned business. To state that partners are co-owners of a business is to state that: (i) they share in the profits (if any) of the enterprise; and (ii) *ab initio* at least, they collectively have the power of ultimate control. Consequently:
>
> • mere passive co-ownership of property, as distinguished from using the property to carry on a business, does not establish a partnership, . . . and
>
> • merely sharing gross revenues is likewise insufficient[.]

Uniform Partnership Act, Uniform Laws Annotated § 202, Formation of Partnership (2013).

Herein, the only evidence of the City's alleged business ownership is the agreement that the City owns a portion of the final compost product. This is nothing more than passive ownership that does not demonstrate any level of control in the operations of the compost yard. Similarly, LBF concedes that all the City receives is revenue from a portion of the compost sales, but the KUPA uses the term *profits*, which is "the excess of revenues over expenditures[.]" BLACK'S LAW DICTIONARY (12th ed. 2024). Accordingly, we conclude that the court did not err in granting the City summary judgment in its favor.

Given our above analysis, we do not reach the issues of liability or damages.

-21-

## CONCLUSION

For the foregoing reasons, the order of the Simpson Circuit Court is

AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Janet Crocker
Franklin, Kentucky

BRIEF FOR APPELLEES
WESTERN KENTUCKY
UNIVERSITY, PAUL WOOSLEY,
PhD, AND JOSEPH REYNOLDS:

Colton W. Givens
Thomas N. Kerrick
Bowling Green, Kentucky

BRIEF FOR APPELLEE CITY OF
BOWLING GREEN, KENTUCKY

Hillary Hightower
Bowling Green, Kentucky

Jason Bell
Elizabethtown, Kentucky